## Margaret Tompkins at al. *v.* Horace Prentice et al.

A testator having no descendents living, devised his whole estate to his mother, brother and sister, omitting entirely his father who survived him. The father made a notarial act of renunciation of all his right and interest in the estate of his deceased son. Creditors of the father claimed the right to have the renunciation set aside on the ground that it was made by their debtor in fraud of their rights as judgment creditors, and to have the portion of the estate for which they alleged the father was the forced heir of his son, subjected to the payment of their claims against the father. *Held :* That such an action could not be maintained.

There are rights of the debtor which the creditors cannot exercise, even should he refuse to avail himself of them.

The debtor in this case would only have the right to demand the reduction of the donation *mortis causa* to the disposable portion.

By Art. 1491 Civil Code, this reduction can be sued for only by *forced heirs or by their heirs* or assigns ; the word " assigns" is defined to mean those whose rights have been transmitted by particular title, such as sale, donation, legacy, transfer and cession. C. C. 3522.

The creditors of the forced heir are not embraced within the definition, and cannot sue for the reduction.

APPEAL from the District Court of Carroll, *Farrar,* J.

*Short & Parham,* for plaintiffs and appellants.    *L. Selby,* for defendants.

Merrick, C. J.   The action of the creditors in avoidance of the contracts of their debtors, is allowed by the Code for the purpose of annulling some fraudulent act of the debtor himself.

But in this case the principal act complained of, is that of *Joseph Prentice* in making a will, by which he conveyed his whole estate to his mother, brother and sister.   Had he given one-sixth of his estate to his father, *Horace Prentice,* there would have been no pretence for the institution of this action.

But *Joseph Prentice* was not the debtor of the plaintiffs.   He owed them nothing.

By Article 1491 C. C. it is provided that on the death of the donor or testator, the reduction of the donation, whether *inter vivos* or *mortis causa,* can be sued for *only by forced heirs or by their heirs or assigns.*

By Article 3522, the term " assigns" is defined to mean those whose rights have been transmitted by particular title, such as sale, donation legacy, transfer and cession.   The French word *ayant-cause* is defined in the same language. Moreover, the Article declares that whenever the terms of law employed in the Code have not been particularly defined therein, they *shall* be understood as defined in said Article.   See 8 Toul., No. 245.

Now the law-giver must be understood to have used the word in the sense defined, because in the concluding portion of the Article the word " creditor" is used in contrast with the word " assigns."

Possibly the law-giver may have preferred to give effect to the *wishes of the testator* and allow *his* estate to take the direction he had indicated, rather than subject it to the seizure of creditors of an heir who did not feel himself aggrieved by the universal legacy to another.

In another place the Code says, that there are rights of the debtor which the creditors cannot exercise, even should he refuse to avail himself of them. They cannot require the separation of property between husband and wife, nor can they oblige their debtor to accept a donation *inter vivos* made to him, nor accept it in his stead.   Neither can they call on a co-heir to collate when such

59

debtor has not exercised that right.   C. C. 1986, 1987.   Article No. 1491 has but added another case of like nature to the list.

Had this very case been in the mind of the law-giver, it is not unreasonable to suppose that in the controversy to the estate of the testator between the mother, brother and sister of the deceased, and the creditors of the father, that the former would have been preferred.   The letter of the law protects them in their possession under the will so long as the father of the deceased does not choose to disturb the dispositions of the will.

In our opinion what was in the mind of the compilers of the Napoleon Code, or what has been said by the French commentators, ought not to preponderate against the express definition of a term given by the compilers of our own Code, and sanctioned by the law-making power.

Judgment affirmed.

BUCHANAN, J., concurring.   The petition has a double aspect: one against *Horace Prentice*, in relation to whom it is a revocatory action; and the other against his two co-defendants, *Minerva L. Prentice* and *Horace D. Prentice*, in relation to whom it is an action for the reduction of a donation *mortis causa*.

From the manner in which the plaintiffs state their case in the petition, as well as from the objection made by them to the admission of *Joseph Prentice's* will in evidence, it is apparent that they would have preferred to treat the succession of *Joseph Prentice* as an intestate estate.   But this cannot be done; and their objection to the introduction of the will was properly overruled.

*Joseph Prentice* has disposed of all his estate by his will, in favor of three persons: 1st, his mother, as legatee by universal title, for one-half; 2d, his brother *Horace Prentice*, as legatee by universal title, for one-fourth; and, 3d, his sister, *Celia Maria Prentice*, as legatee by universal title, for one-fourth.

*Joseph Prentice's* father has, therefore, no interest whatever in the succession of his son, unless the will is set aside partially, by reducing the legacies to the testator's mother, brother and sister to the disposable portion; for note, that by Article 1489 of the Code, a disposition *mortis causa* exceeding the disposable portion, is not null, but only reducible to that portion.

The renunciation by *Horace Prentice*, the father, of all interest in his son's estate, can only be viewed as significant of his intention not to contest his son's will.   The creditors have sustained no prejudice by such renunciation, so long as the will is not attacked.   Their right to attack the will is, therefore, the vital point in plaintiffs' case; and I am of opinion with the Chief Justice, that we are bound to interpret the word *assigns* in Article 1491 according to the definition contained in Article 3522.   The latter Article is, as far as it goes, a legislative glossary of the Code.   It commences thus: "Whenever the terms of law, employed in this Code, have not been particularly defined therein, they *shall be understood* as follows."

The Code Napoleon contains no glossary of this kind.   Had it done so, the comments of Coin-Delisle and others upon the expression *ayans-cause* in Article 921 of that Code, would have been superfluous.

Although it may be going further than the subject requires, I will venture to observe, that I am not at all clear that *Horace Prentice*, the father, could have successfully combatted the will of his son, had he been so inclined.   *Joseph Prentice* has only disposed of *one-half* of his estate to the prejudice of his parents, instead of two-thirds, as he might have done legally.   It is true, the

other half is only given to *one* parent. But does not this fulfil the law? Or was he bound to mention *both* his parents? The question does not seem to me free from difficulty.

TOMPKINS
*v.*
PRENTICE.

I will also observe, that the plaintiffs have not made all the necessary parties to their action for the reduction of the donation, supposing they have the right to maintain such an action. The testator's sister is not mentioned in the petition.

SPOFFORD, J., dissenting. The plaintiffs have been for many years judgment creditors of *Horace Prentice*, one of the defendants, but have been unable to enforce a collection of their claims, because he held no property in his own name.

It appears, however, that after *Horace Prentice* ceased to hold property in his own name, *Maunsel White* made a donation of some fifteen slaves and several promissory notes to *Joseph Prentice* and *Horace D. Prentice*, minor children of *Horace Prentice*, who accepted the donation for them in his quality of tutor. *Joseph Prentice* also made other acquisitions. The father, *Horace Prentice*, seems to have had the management of this property of his children which was situated in the parish of Carroll, where he resided.

It appears that in the spring of 1854, *Joseph Prentice*, being of age, came to New Orleans to reside. He lived here something more than a year, and in August, 1855, was accidentally killed during a temporary absence from the city.

He left an olographic will bequeathing one-half of his property to his mother, *Minerva S. Prentice*, and the other half in equal portions to his brother *Horace D.* and his sister, *Celia Maria Prentice*.

On the 8th December, 1855, upon the application of *Horace Prentice*, the father, this will was admitted to probate in the District Court of New Orleans.

On the 12th of November, 1855, however, *Horace Prentice* had made a notarial act of renunciation of all his right and interest in the succession of his deceased son *Joseph*. This act was passed before the recorder of the parish of Carroll.

The present suit has a two-fold object; 1st, to set aside this renunciation on the ground that it was made by the debtor in fraud of the right of the plaintiffs as judgment creditors of *Horace Prentice*; and, 2ndly, to have the amount of the interest of said *Horace* in the succession of his son *Joseph* determined and subjected *pro rata* to the payment of their claims.

There was judgment for the defendants and the plaintiffs have appealed.

The defendants, *Horace Prentice*, for himself and as tutor of the minors, and *Mrs. Prentice*, rely upon the will and upon a plea of prescription of ten years against the judgments of the plaintiffs.

The judgments are not barred by the prescription established in the Act of April 30th, 1853 (Sess. Acts, p. 250), as contended for by the appellees. Laws concerning prescription, like laws in general, are prospective in their operation. The rule is well settled in our jurisprudence, that when a statutory change is made in the term of prescription against any particular class of actions or demands, the time that elapses previous to the change is reckoned according to the old law, and that subsequent to the change according to the new law. *Kellar* v. *Parish & Thompson*, 11 An. 112, and cases there cited. If then it was conceded that, before the Act of April 30th, 1853, domestic judgments were prescriptible in thirty years, only about ten years of the time had run and about twenty years remained to run when the change was made, which re-

duced the time to one-third of the old period. That would leave nearly seven years to run before the judgments could be prescribed against under the new law, and less than three years had expired when this suit was brought.

Horace Prentice was heir to one-fourth of his son Joseph's succession. C. C. 899; Cole's Heirs v. Cole's Executors, 7 N. S. 417; Grover v. Clack, 7 An. 174. Under these decisions, if he had been the sole surviving parent, he would have been forced heir for one-fourth. But, as the mother survived also, each of them was forced heir for one-sixth only of their son's succession, for "donations inter vivos or mortis cousa cannot exceed two-thirds of the property, if the disposee, having no children, leave a father or mother, or both." C. C. 1481. He could dispose to the prejudice of both father and mother of two-thirds of the estate, leaving one-third as the légitime to be equally divided between them according to the principle announced in the Article 899.

It is contended by the appellants that the will was null as to the father, because he was not expressly disinherited according to the forms prescribed by the Code, and the inference seems to have been drawn that he was, therefore, entitled to one-fourth of the succession. But the only effect of this preterition was to leave him seized of his légitime at the opening of the succession, that is of the one-sixth for which he was forced heir, and of which he could not be deprived except by a disinherison in due form and for just cause. C. C. 1609. See Johnson v. Davidson, 6 M. 506.

His renunciation of his right to this one-sixth was a gift of all the property he had, to the prejudice of his creditors, and it was, therefore, in legal contemplation a fraud upon them. Every man is bound to do justice before he can be permitted to be generous. The debtor's property is the common pledge of his creditors. And the law has guarded in express terms against such a liberality as was displayed by this insolvent debtor, who would rather decline the bounty which Providence casts upon him, than suffer it to enure to the discharge of his legal engagements. "Every act done by a debtor with the intent of depriving his creditor of the eventual right he has upon the property of such debtor is illegal, and ought, as respects such creditor, to be avoided." C. C. 1964. "Not only contracts which dispose of property, but all others which are made in fraud of creditors, and deprive them of their recourse to the property of their debtor, come within the provisions of this section. The renunciation of a succession or other right to property, the release of a debt without payment, or any other act of this kind, may be avoided by creditors, when done to their prejudice, under the rules above established." C. C. 1984.

The renunciation made by the defendant, Horace Prentice, should then, so far as the complainants are concerned, have been set aside. This disposes of the first branch of the plaintiff's demand.

The second question presents more difficulty. What will be the effect of the revocation of this renunciation, and what rights can those plaintiffs claim in the succession of Joseph Prentice?

The Code is clear and positive upon the first of these points. The creditors who have procured the fraudulent renunciation of the heir to be set aside, are, until paid the amount of their claims, put in his place and stead. In the eye of the law, they become beneficiary heirs themselves to the extent of their claims upon the heir. Thus: "The creditors of the heir who refuses to accept, or who renounces an inheritance to the prejudice of their rights, can be authorized by the Judge to accept it, in the name of the debtor and in his

*stead*, according to the forms prescribed on this subject in the following section :

"In case of this acceptance, if there be renunciation on the part of the debtor, the renunciation is annulled only in favor of the creditors *for as much as their claims amount to ;* but it remains valid against the heir who has renounced.

"If, therefore, after the payment of the creditors, any balance remains, it belongs to his co-heirs, who may have accepted it, or if the heir who has renounced be the only one of his degree, it goes to the heirs who come after him.

"If, on the contrary, the heir has only refused to accept and has not renounced, he can claim the surplus on accepting the succession, provided his right of acceptance be not prescribed against." C. C. 1014.

"When the creditors wish to be authorized to accept a succession, which their debtor refuses to accept, or which he has renounced to their prejudice, they must present a petition to the Judge of the place where the succession is opened, to obtain the authorization necessary for that purpose, after the debtor or his representative has been duly cited, or a counsel appointed for him, if he is absent, by the Judge." C. C. 1064.

"If, on this demand, it is proved to the Judge that the debtor refuses to accept the succession, or has renounced it to the prejudice of his creditors, he is bound to authorize *the creditors to accept it in his stead ;* and it is the duty of the Judge to cause immediately to be made an inventory of the effects of the succession, to appoint an administrator to manage them, sell them and pay the creditors, on his giving good and sufficient security for the fidelity of his administration, as in the case of acceptance with benefit of inventory." C. C. 1065.

"The creditors, who thus accept a succession *in the name of their debtor*, are considered as accepting it under benefit of inventory." C. C. 1067.

But, in this case, it appears that the property is in the parish of Caroll, not administered, but held in possession, as owners, by the legatees under universal title. It does not appear that the succession owes any debts. By instituting this suit, the creditors of the renouncing heir have signified their acceptance in his stead. The instituted heirs have met the issue without taking any exception to the form of the proceeding, and I am of opinion that the whole merits of the controversy may be now decided.

The District Judge seems to have thought that the Article 1746 of the Civil Code and the doctrine laid down in the case of *Cook* v. *Doremus*, 10 An. 679, formed a barrier to the claim of the plaintiffs. There is no such state of facts presented as would authorise this conclusion. Even if the right of *Horace Prentice* in this succession were defeasible by a condition subsequent, no such condition has been fulfilled, and his creditors may take whatever interest he has, unless there is some other bar to the action. Moreover, the property did not descend to *Joseph Prentice*, or come by donation from either of his ascendants. The greater part of it came to him as a donation from a stranger, and he acquired the rest by purchase.

But it is contended that the action is in effect an action in reduction of an excessive donation *mortis causa*, and that the Article 1491 of the Louisiana Code, forms a peremptory bar to the demand on the part of the creditors of the heir. "On the death of the donor or testator, the reduction of the dona-

tion, whether *inter vivos* or *mortis causa*, can be sued for only by forced heirs, or by their heirs or assigns; neither the donees, legatees, nor creditors of the deceased, can require that reduction nor avail themselves of it." C. C. 1491.

The argument is that the creditors, plaintiffs in this cause, are not forced heirs themselves, nor heirs, nor assigns of the forced heir; and, therefore, that they cannot demand a reduction of the excessive legacies to the mother, brother and sister of the deceased in derogation of the *légitime* reserved by law to the father as forced heir.

It will be observed that the word "assigns" is "*ayants-cause*" in the French text, and that, in this particular, the Article is literally taken from Article 921 of the Code Napoleon. It will also be observed that the word *ayants-cause* in Article 921 of the latter Code, is held by the French authorities, with entire unanimity, to embrace personal creditors of the heir. See Grenier, No. 595; Delvincourt, t. 2, note 4, p. 66; Toullier, t. 5, No. 125; Coin-Delisle, Art. 921, No. 2; Marcadé, t. 3, No. 583. Indeed, Coin-Delisle justly remarks that this word is a generic term and was chosen by the *rédacteurs* of the Code for its extensive signification. "Le tribunal avait demandé de substituer les mots *cessionaires* et *créanciers* à ceux d'*ayants-cause*, mais le Conseil d'Etat a dû conserver la première rédaction comme présentant un sens *plus étendu*." Donations et Testaments, Art. 921, No. 2.

In the English law, *assigns* means those persons to whom some right or property is transferred, whether by deed, or *by operation of law*. Burrill's Law Dic. The definition of the term in Art. 3522, No. 5, of the Louisiana Code, appears to be somwhat more restricted.

The turn of the phrase in the concluding part of Article 1491, seems to indicate that creditors are intended to be embraced in the word "assigns"; the Article declares that the reduction can be sued for only by forced heirs and *their* heirs or assigns; neither the donees, legatees nor creditors *of the deceased* can require it, &c. Here the "assigns" *of the forced heir* are placed in antithesis to the "donees, legatees and creditors" *of the deceased*. The leading intention obviously was not to limit the right of action as to those who claimed through and under the forced heir or in his right, but to shut out those only who wished to exercise this action by reason of some claim they had under or against the deceased testator, other than that of forced heirship to him.

But it matters little what definition be given to the word assigns in Article 1491; for the creditors in this action having accepted the succession which the heir fraudulently renounced, act *in his name and stead ;* as already remarked, they take the place of the forced heir until their claims are satisfied, and their right to demand the reduction of the legacies in the name of the heir, seems to have been recognized by the tenor of the Code in treating of this subject, and especially by the Article 1985, which is in these words: "In case the debtor refuse or neglect to accept an inheritance to the prejudice of his creditors, they may accept the same, and exercise all his rights in the manner provided for in the title of successions, and they are authorized, by virtue of the action given by this section, to exercise all the rights which the debtor could do for recovering the possession of the property to which he is entitled, in order to make the same available to the payment of their debts."

The present case comes within none of the exceptions to this rule, which are enumerated in the following Articles 1986 and 1987:

And in *Lynch* v. *Kitchen*, 2 An. 844, it was held, that " creditors can exer-

cise all the rights and actions of their debtors, except those reserved in Articles 1986 and 1987 of the Civil Code."

Passing from this review of the case, I would remark, that if we give the word "assigns" in Article 1491 the narrowest meaning, it does not seem to follow that the creditors of the heir assuming his place, may not attack an excessive donation *mortis causa*. Marcadé has judiciously observed, that if the Article of the Code Napoleon (921), from which we have taken our Article 1491, had said that the reduction might be sued for only by forced heirs, and had omitted the phrase "and their heirs or assigns," still the right of the creditors of the forced heir to take his place, and sue for the reduction, would have resulted from other provisions of the Code.

"Enfin, sans que le réservataire ait transmis son droit à personne, il est clair que les créanciers qui ont pour gage légal tous les biens de leur débiteur, (Art. 2092, 2093,) auront droit à sa réserve comme à tous les autres biens lui appartenant, et pourront intenter l'action en réduction en son nom, pour se faire payer sur les valeurs qu'elle produira. Ce droit est formellement écrit dans l'Art. 1166, qui, déduisant la conséquence de l'Art. 2093, déclare que les créanciers peuvent exercer toutes les actions appartenant à leur débiteur. On en excepte, il est vrai, et avec raison, les actions qui reposent sur un intérêt plutôt moral que pécuniaire (comme une nullité de mariage, une séparation de corps, &c.) ; mais l'action en réduction ne tendant qu'à obtenir une part de succession, des biens, de l'argent, et se trouvant purement pécuniaire, il est clair que cette exception ne saurait l'atteindre.

"En un mot, l'action en réduction peut être intentée par tous représentants ou ayants-cause du réservataire, et nous n'avions nul besoin des termes de notre Article pour comprendre ce résultat." 3 Marcadé, No. 583.

I am accordingly of opinion that the present action can be maintained.

VOORHIES, J., concurred in this opinion.