## No. 9891.

### Edward C. Hancock vs. Eliza Jane Holbrook et al.

The right to avoid titles to property on the ground of fraud must be exercised within a reasonable time after discovery, especially where the property is of fluctuating value dependent upon successful administration: the party cannot await the event, and then claim the profit.

The institution of a suit not prosecuted may save the action from this equitable bar, but the plaintiff's neglect of his duties as director. failure to interpose for the prevention of the transactions while they were, to his knowledge, in course of consummation, and his inaction until the death of the principal actor, whose title he attacks, subject his claims to scrutiny and adds to the burden of proof resting on him.

The stockholders of a corporation, in the name of which property has been bought on credit, cannot form a new corporation in which their interests are the same as in the old and based on no new consideration, and by transferring the property to the new corporation escape liability to the vendor and creditors at least to the value of the property.

The acceptance of the surety on a twelve months' bond of the assumption of a third person to hold him harmless, does not deprive him of his recourse against the principal of the bond or the property for the price of which the bond was given, when the assumption is not discharged and the surety has paid the bond.

The board of directors of a corporation have the general right to apply its property to the payment of its debts; and a majority of stockholders present, at a meeting regularly convened, with due notice for the purpose, have the right to ratify such action and dissolve the corporation.

But where such action is had through the influence of the president of the corporation, and where the debt to which the property is applied is one for which he is primarily liable and especially when he has subsequently acquired the property, such circumstances sub-

ject his action to severe scrutiny and require of him proof that he acted with candor and fair dealing for the interest of the corporation and without any taint of selfish motive.

The above test is applied to the action of Holbrook, the assignor of defendants, and it is found to stand the ordeal.

Transactions which only accomplish justice, which are done in good faith and operate no legal injury, lack the characteristics of fraud.

Judgment affirmed.

APPEAL from the Civil District Court for the Parish of Orleans; _Tissot_, J.

### _Rouse & Grant_ for Plaintiff and Appellant:

1. The directors of a body corporate are trustees, and the stockholders are the _cestui que trust_, and have a joint interest in all the property and effects of the corporation. Jackson vs. Ludeling, 21 Wall. 616; Koehler vs. Iron Co., 2 Black, 715; Drury vs. Cross, 7 Wall. 299; Cochran vs. Ocean Dry Dock Co., 30 Ann. 1366; 1 Perry on Trusts, Sec. 207, Note 5; Angel & Ames on Corp., Sec. 312; 3 Pomeroy Eq. Jurisp., Sec. 1088.

2. Trustees are incapable of purchasing the trust property themselves or of deriving any profit from it. Gardner vs. Ogden, 22 N. Y. 343; Butts vs. Wood, 37 N. Y. 319; Railroad Company vs. Durant, 95 U. S. 576; Ervin vs. Oregon N. & R. Co., 27 Fed, Rep. 625; Greenlaw vs. King, 3 Beav. 49, 61; Gibson vs. Jeyes, 6 Ves. 278; 17 Fed. 17.

3. A purchase by the trustee of the trust property, carries fraud upon the face of it. Michoud vs. Girod, 4 How. 553.

4. The _cestui que trust_ has a right to follow the trust property into the hands of a third person, unless he be a _bona fide_ purchaser, for a valuable consideration without notice. Oliver et al. vs. Piatt, 3 How. 333, 401; Bank vs. Insurance Co., 104 U. S. 66; Cook vs. Tullis, 18 Wall, 341.

5. Whenever a trustee reacquires trust property, disposed of by him in breach of his trust, the trust revives, and reattaches to it in his hands 2 Story's Eq. Jurisp. Sec. 1204; Oliver et al. vs. Piatt. 3 How. 401; Cook vs. Tullis, 18 Wall. 341. Or the _cestui que trust_ may hold the property which has been substituted for it Ibid. And the rule is the same, when a party acts in a fiduciary character. Banks vs. Insurance Co., 104 U. S. 68.

6. The representatives of a deceased trustee are liable to the extent of assets for a breach of trust committed by the decedent in his lifetime. 2 Perry on Trusts Sec. 877; Hill on Trusts, 250; Hazard vs. Durant, 19 Fed. R. 471.

7. Mrs. Holbrook, universal legatee of A. M. Holbrook, acquired the Picayune, affected with the trust. As such legatee she is also liable for the debts of the testator. Succession of Milne, 2 Rob. 382; C. C. 611.

8. Nicholson acquired his interest _pendente lite_, with full knowledge of the trust character of the property, and, therefore, subject to the trust. 2 Perry on Trusts, Secs. 810, 814, 828; Kitchen vs. Bedford, 13 Wall. 413.

9. Upon dissolution of a corporation, the property thereof becomes vested in its members. Burke vs. Wall, 29 Ann. 38; Starke vs. Burke et al., 5 Ann. 740; Citizens' Bank vs. Levee St. Cotton Press Co., 7 Ann. 286.

10. Where the officers', or majority stockholders' action is destructive of the corporation, or where they act for their own interest, a stockholder may himself bring suit for his protection. Hawes vs. Oakland, 104 U. S. 450, Pomeroy, Sec. 1095.

11. The surety on a twelve months' bond, who pays the same, is subrogated _only_ to the creditor's rights _in the bond itself_. Trent vs. Calderwood, 2 Ann. 942; Tardy vs. Allen, 3 Ann. 66; Old vs. Chambliss, 3 Ann. 206; Crow vs. Walsh, 3 Ann. 541.

12. The resolutory condition can be enforced only by the vendor. Swan vs. Gayle, 24 Ann. 498. The parties must be the same. Augusta Ins. Co. vs. Packwood, 9 Ann. 75. It

Hancock vs. Holbrook et al.

cannot be enforced in case of movables, when they have been transferred to a third persons. Lalance vs. Wolf, 28 Ann. 942; Wilmot & Co. vs. Ouachita Belle, 32 Ann. 611.

13. The vendor's privilege upon movables continues only while in the vendee's possession. Flint & Jones vs. Rawlings, 20 Ann. 557: Penn vs. Ott, 12 Ann. 233; C. C. 3217, 3227.

14. A party is not bound by an admission made under mistake of law. Pearce vs. Grove, 3 Atk. 523; 36 N. Y. 637; 92 N. Y. 218. A complainant in equity may have relief against the averment of his bill. Finlay vs. Lyon, 6 Cranch, 238; 19 How. 173. And will not be defeated by ambiguous language, contradictory and repugnant to precedent matter. 1 Chitty's Pl. 231; 1 Salk. 324: 13 C. B. 541.

15. Three years possession as owner, by a just title and in good faith, is necessary to acquire title to movables by prescription. C. C. 3506; 2 Ann. 997.

16. The precarious possessor cannot prescribe by any lapse of time. Michoud vs. Girod, 4 How. p. 149, No. 11. So in the case of mandataries. Jackson et al. vs. Jones et al., 14 Ann. 230; C. C. 3441, 3489, 3510, 3514; 10 Rob. 534; 3 La. 568.

17. As between trustee and *cestui que trust*. no lapse of times bars the action. 23 Wall. 119.

*Thomas J. Semmes* and *Robert Mott*, for Defendants and Appellees:

1. A man's own admissions are the highest evidence against him; the effect thereof cannot be destroyed or weakened by any contradicting evidence. 6 M., 280, Delacroix vs. Prevost.

2. He is not allowed to dispute his judicial admission. 23 Ann. 764, 5 Ann. 22, 12 Ann. 445, 18 Ann. 140, 31 Ann. 158, 33 Ann. 1198, 35 Ann. 744, 37 Ann. 108.

3. A judicial admission cannot be retracted to the prejudice of the adversary. 1 R. 546, 3 R. 48, 10 Ann. 542, 11 Ann. 710, 4 Ann. 416.

4. An answer in chancery can be used by defendant as evidence for himself, in so far as it is responsive to the bill. 49 Vermont 270, 40 Ind. 126, 9 Cranch 161. 1 Dan'l. Ch. Pr. 841 [n].

5. A deposition taken in a suit may be used in a subsequent suit between the same parties, especially if it be for the same cause of action. 1 Ann. 391, 9 R. 203.

6. The transfer of a cause from one court to another does not affect the depositions taken in the court where it originated. 1 La. 173.

7. An answer in chancery is equal to the testimony of any other witness. 9 Cranch 160.

8. The surety who pays a twelve months' bond is subrogated to the rights of the payee of the bond. 16 Ann. 266. 25 Ann. 116.

9. A person who pays a debt for another, which he is legally bound to pay, or has an interest in paying, is subrogated to all the rights of the creditor against the person for whom he has paid. 6 La. 479, 1 La. 410, 2 R. 424, 32 Ann. 502.

The opinion of the Court was delivered by

FENNER, J. In 1873 there existed in this city a newspaper association known as the New Orleans Herald Company, the parties mainly interested in which were H. C. Warmoth, Edward C. Hancock and Alexander Walker. They had been, for a short time, publishing an evening paper called the New Orleans Herald, which was not pecuniarily profitable, and, according to our appreciation of the weight of evidence, the company was insolvent.

The New Orleans Picayune newspaper, which in 1872 had been purchased by an association of citizens who had organized themselves into a corporation known as The New Orleans Printing and Publishing

Company, had likewise proved a losing venture, and in the fall of 1873 had been seized by judgment creditors and was advertised for judicial sale on twelve months' bond.

A scheme was then formed between the parties interested in the Herald Company to purchase the Picayune establishment and to consolidate it with the Herald, and to make the joint enterprise a success by placing its management under the control of an experienced and able newspaper director, A. M. Holbrook, who had been connected with the Picayune in its palmy days, and had conducted it profitably.

This scheme, formed in advance, embraced *ab initio*, as we find from the evidence, all the substantial features of the proceedings which subsequently took place.

The Herald Company had neither the means nor the credit to make the purchase, but Warmoth had both and was willing to use them.

Accordingly, at the sale on December 16, 1873, the Picayune establishment was adjudicated to the Herald Company, which gave its twelve-months bond, signed by Joseph Hernandez, as surety, who signed the same at the solicitation and under the personal guaranty of Warmoth.

Immediately thereafter the Herald Company executed an act of transfer of the property to A. M. Holbrook, upon the consideration of the latter's assuming to pay the twelve-months' bond at maturity, as security for which assumption he also furnished certain collateral securities.

Contemporaneously, a new corporation was formed styled the New Orleans Printing Company, having a nominal capital of $30,000, divided into one hundred and twenty shares, of which sixty-five shares were allotted to Holbrook, and the rest were distributed amongst the shareholders in the Herald Company in the proportions of the stock held by them respectively in the latter company. In this new corporation, thus organized, Holbrook conveyed the Picayune establishment on a consideration of $30,000, acknowledged to have been received by him, but for which he really received nothing except the sixty-five shares of stock assigned to him.

The charter itself constituted as the first Board of Directors A. M. Holbrook, E. C. Hancock, Alex. Walker, R. W. Holbrook and P. St. Amand, the two latter being, to the knowledge and with the consent of all parties, mere representatives of A. M. Holbrook, under an assignment to them of one share each of the latter's stock, the object being to secure to Holbrook control of the management.

The charter contained the following express provision:   "The

Board of Directors shall adopt such By-Laws as may be necessary to manage the company and appoint such officers and clerks as may be required."

In execution of this power the Board of Directors, at its first meeting, adopted by-laws which Hancock claimed were in violation of an alleged verbal understanding or agreement that he and Walker were to retain the editorial control of the paper. In the conflict of the evidence as to this agreement the charter, which contains the final stipulations between the parties, must prevail.

After this first meeting Hancock, without resigning his directorship, entirely withdrew his services, and never attended any other meeting of the directors or took any concern in the conduct of the paper.

If the paper did not succeed, Hancock, who thus ignored his duties as a director and withdrew his editorial services and support, is certainly not in position to shift the blame on others.

The paper did not succeed ; the title to the property was thrown in litigation by a suit attacking the sheriff's sale, brought by the former Picayune Company ; the country was still suffering from the panic of 1873 ; the times were unpropitious ; the paper made no money. The twelve-months' bond given for the price was running to maturity. Holbrook announced his inability to carry out his bargain to take it up. The collateral securities which he had furnished were of little or no value. The Herald Company had passed into the limbo of utter insolvency. It was evident that the surety, Hernandez, or his guarantor, Warmoth, would be compelled to pay the bond.

Under these circumstances, on December 14, 1874, a meeting of the Board of Directors was called, Hancock, as usual, absent, and the following resolution was adopted :

" Whereas, the twelve-months' bond for the original purchase price of the Picayune establishment, given to the sheriff in the suit of John Phelps vs. New Orleans Printing and Publishing Company, 4979, Sixth District Court, amounting to $20,211 38, is about to become due and payable ; and,

" Whereas, A. M. Holbrook is unable to pay the same ; and whereas, this company has not the means to satisfy said bonds; and it is just and equitable that this company should not retain the property for which the said bond was given, to the detriment of the surety on said bond ; therefore, be it

*Resolved,* That in case Joseph Hernandez, the surety on said bond, shall pay the same, the president of this company be and is

hereby authorized|to sell and transfer the Picayune establishment, and all its property and good will, to the said Joseph Hernandez, in satis-faction of his claim as surety on said bond."

On the following day, Hernandez, or his guarantor, Warmoth, hav-ing paid the bond, the above resolution was executed by the transfer of the property to him.

On the 22d December, 1874, in pursuance of a resolution of the direc-tory and of notice duly given, a meeting of the stockholders of the corporation was convened, at which the following resolution. was of-fered and adopted:

" Whereas, in pursuance of a resolution of the Board of Directors heretofore passed, A. M. Holbrook, president, has sold and delivered the Picayune newspaper establishment, good will and property to Joseph Hernandez in payment and settlement of the twelve-months' bond on which said Hernandez was surety, etc.

*Resolved,* That the stockholders, in meeting assembled, do hereby ratify and confirm said sale and transfer.

*Resolved* by the stockholders of this company, in meeting assembled, ninety-one shares out of the one hundred and one shares issued, vot-ing therefor, that this company be now dissolved and put in liquida-tion, and that a commission of R. Fitzgerald and R. W. Holbrook is hereby appointed to wind up and liquidate the affairs of this corpora-tion."

The following stockholders were represented and voted at this meeting:

| | |
|---|---|
| A. M. Holbrook | 63 shares. |
| R. W. Holbrook | 11 shares. |
| R. Weightman | 8 shares. |
| Peter St. Amand | 4 shares. |
| George Nicholson | 3 shares. |
| J. A. Quintero | 1 share. |
| R. Fitzgerald | 1 share. |
| Total | 91 shares. |

Whatever may have been the origin and nature of their titles, it is not disputed that they actually represented the stock voted by them, and, even leaving out the sixty-five shares originally assigned to A. M. Holbrook as the consideration for his assumption of the bond, the remaining twenty-six shares constituted a majority of the other stock.

either actually issued or demandable, the whole of which, according to plaintiff's own admission, was only fifty-one shares.

On the same day Hernandez sold the Picayune to A. M. Holbrook individually for a consideration of $27,000 (or as claimed by plaintiff, of $32,000 and it matters not which), payable on long time, in small periodical notes, running over several years and secured by a pledge of the establishment.

During all the above transaction, of which he cannot and does not plead ignorance, not a word was heard from Hancock, either as stockholder or director. No other stockholder has complained. Hancock appears to have instituted some suit in January, 1875, the record of which is lost and its nature not very well explained in evidence ; but it was not prosecuted and was dismissed in November, 1876, when the present suit was brought. Thus he postponed the serious judicial assertion of his claims for nearly two years, during which Holbrook, by his own skill and labor, had converted a failing, into a successful, enterprise, and had paid off a large portion of the price which he had agreed to pay, and only began it when death had placed its seal on Holbrook's lips and deprived him of the opportunity of defending his. conduct.

But for the institution of the first suit plaintiff's case would undoubtedly fall under the equitable bar announced by the Supreme Court of the United States in a case similar to this, where a corporation sued to avoid a purchase of its property by one of its directors in alleged fraudulent breach of his fiduciary duties, and the Court said : "The doctrine is well settled that the option to avoid such a sale must be exercised within a reasonable time. * * * The authorities to the point of the necessity of the exercise of the right of rescinding or avoiding a transaction as soon as it may be reasonably done, after the party with whom that right is optional, is aware of the facts which give him that option, are numerous (citing them). The cases of Bliss vs. Edmondson, 8 DeG., M. and G. 787, and Pendergast vs. Norton, 1 Yon. and Call., while asserting the same general doctrine, have an especial bearing because they relate to mining property. The fluctuating character and value of this class of property is remarkably illustrated in the history of the production of mineral oils from wells. Property worth thousands to-day may be worth nothing to-morrow, and that which would to day sell for a thousand may, by natural changes of a week, or by the energy and courage of desperate enterprise, in the same time be made to yield that much every day·

The injustice, therefore, is obvious, of permitting one holding a right to assert ownership in such property to voluntarily await the event, and then decide when the danger is over which has been at the risk of another, to come in and share the profits." Twin-Lick Co. vs. Marbury, 91 U. S. 587.

The doctrine is strongly applicable to property like a newspaper, whose value is not fixed, but fluctuates, according to the skill, energy and success with which its affairs are managed.

But for the success which attended Holbrook's management, we may well believe that the suit which was suffered to slumber on the records' for nearly two years, and was then dismissed for reasons not explained, would never have found resurrection in the present vigorous action.

Conceding, however, that his first suit saves him from the absolute bar above indicated, yet his neglect of his duty as a director, his failure to interpose for the prevention of these transactions while they were being, to his knowledge, consummated, and his inaction until after Holbrook's death, are certainly circumstances which subject his claims to severe scrutiny and require, at his hands, the clearest dis- ·charge of the burden of proof resting on him.

Briefly stated, the gist of plaintiff's action lies in the following charges :

First—That Hernandez, as surety on the twelve months' bond, if ·compelled to pay it, had no claim, on that account, against either the Picayune Company or its property, but had no recourse except against the defunct Herald Company and against Holbrook individually under his assumption.

Second—That the transfer to Hernandez and the subsequent re-transfer to Holbrook individually were parts of a fraudulent scheme ·and conspiracy between Holbrook and other parties concerned, by which Holbrook availing himself of his control of the majority of the Board of Directors and of the majority of the stock, applied the whole property of the corporation, of which he was president, to the payment of his individual debt and then re-purchased the same in his personal capacity.

Third—That when Holbrook re-acquired the property which he had ·disposed of in breach of his trust, the original trust revived and he held it subject to the rights of the original stockholders in the Picayune Company ; and, as such a stockholder, plaintiff, by this action,

seeks to enforce his rights in the Picayune newspaper now held by defendants.

## I.

As we have already indicated, the evidence satisfies us that the purchaser at the judicial sale and the giving of the twelve months' bond in the name of the Herald Company as principal with Hernandez as surety, were parts of a plan agreed upon in advance by which the Herald Company was used simply as a vehicle by which the property was to be conveyed first to Holbrook and by him to the new corporation which was subsequently formed and which was intended *ab initio* to be the real purchaser at the sale. The new corporation was simply the Herald Company *plus* Holbrook, as evidenced by the glaring fact that its stock, except that assigned to Holbrook, was distributed without other consideration, among the Herald stockholders in exact proportion to their stock therein. The proposition that the stockholders of a corporation can buy property, in its name on credit; immediately thereafter form a new corporation in which their interests are the same and based on no new consideration; transfer the property bought to the new corporation and then hold it free from any liability to the vendor or creditors, is one which cannot be sustained in reason or by authority.

It is perfectly plain that the new Picayune Company, *quoad* this property, stood in the shoes of the Herald Company and was bound for the latter's debt to the extent of its value. Hibernia vs. St. Louis, 13 Fed. Rep. 516; Horner vs. Carter, 11 id. 362.

## II.

Although Hernandez, or his guarantor, Warmoth, accepted Holbrook's assumption to pay the twelve months bond, it is not shown that he consented or intended thereby to waive his recourse against the property, in case Holbrook should fail to carry out his agreement and he should be compelled to take up the bond. The holder of the bond was undoubtedly entitled to such recourse, and when the surety paid he was subrogated to the right. C. C. 2161; Cox vs. Baldwin, 1 La. 410; Baldwin vs. Thompson, 6 La. 479; Howe vs. Frazer, 2 Rob. 424, Hennen vs. Word, 16 Ann. 266; Suc. Hitzler, 25 Ann. 116.

## III.

From the foregoing it follows that in declaring in their first resolutions, that "it is just and equitable that this company should not retain the property for which said bond was given to the detriment or the surety on the bond," the Board or Directors recognized not merely an equitable but a strict legal obligation of the corporation."

Indeed, plaintiff himself, in his own petition herein, distinctly declares " that, in equity and good conscience   *   *   the said New Orleans Picayune Printing Company owed to the said Joseph Hernandez, or his legal assigns, the amount which he paid for the discharge of the twelve months' bond aforesaid, upon which he was surety, as aforesaid, but which was primarily the debt in equity and good conscience of the Picayune Company, as the successor of the Herald Company, which was legally the principal on said bond."

The attempt of plaintiff to withdraw this judicial admission on the plea that it was made in error of law, need not be discussed, being sufficiently disposed of by our own finding that it was not an error of law.

IV.

As a strictly legal question, the right of a board of directors of a corporation to apply its property to the payment of its debts, and the right of a majority of stockholders present at a meeting called for the purpose to ratify such action and to dissolve the corporation, cannot be questioned.

But where such action is taken at the instance, and through the influence of the president of the corporation, and where the debt to which the property is applied is one for which he is himself primarily liable, and especially where he subsequently acquires, in his personal right, the property thus disposed of, such circumstances undoubtedly subject his acts to severe scrutiny, and oblige him to establish that he acted with the utmost candor and fair-dealing for the interest of the corporation, and without taint of selfish motive.  Twin-Lick vs. Marbury, 91 U. S. 590.

We have subjected Holbrook's conduct to this test, and, under the evidence, we believe it has safely emerged from the ordeal.

He had done the best that he could to make the enterprise a success and had failed.  The corporation, undoubtedly was without means, other than this property, to meet the obligation.

We are sastified that Holbrook was really unable to carry out his assumption to pay the bond and that the collaterals which he had given were worthless.

It was evident that the corporation was bound, in law and equity, to protect the surety on the bond, and that there was no other available resource for his protection, except the property which the corporation held without a dollar of consideration, and which the surety was bound to pay for.

Notwithstanding the variance in the estimates we believe the prop-

erty was not worth more than the amount of the bond. It had not materially increased in value since the judicial sale. If seized by the surety and sold, it would not have brought more. At all events, no one was willing to give more. The surety wanted nothing but payment of his bond. The opportunity of taking the property for the amount of the bond was offered to others and was open to plaintiff or any of his friends. Negotiations failed and no purchaser could be found.

Under such circumstances the transfer of the property in satisfaction of the bond and the dissolution of the corporation seem to us to have been the prudent and only feasible solution of its difficulties.

This is not weakened by the fact that Holbrook subsequently purchased for a larger price. That was a mere speculative venture, having no basis except in the hope of a profitable conduct of the business. Holbrook's notes, though for a larger amount, were not intrinsically worth as much as the amount of the bond. They were only accepted after failure of all efforts to find any one who would pay for the property the amount of the bond.

Holbrook was a newspaper man, anxious to find employment. Hernandez (or Warmoth) found himself in possession of a newspaper which was an elephant on his hands. The emergency required prompt action and the contract entered into was a natural one on both sides.

We fail to discover any fraudulent intent or combination in these proceedings, or any injury resulting to plaintiff or other stockholders therefrom.

They have nothing to complain of except the failure of Holbrook to discharge his assumption of the bond, but that only made the corporation his creditor for the amount thereof and possibly for such damages as his default occasioned, and no such claims are urged in this suit.

Transactions which only accomplish justice, which are done in good faith and operate legal injury to no one, lack the characteristics of fraud and are not to be upset because the relations of the parties give rise to suspicions which are fully cleared away.

This case has been already twice judicially determined against the pretensions of plaintiff; first, by the U. S. Circuit Court, to which it was removed, and whose judgment was vacated by the decree of the Supreme Court of the United States, setting aside the removal and remanding the case to the State Court; and, next, by the learned judge *a quo.*

After a painstaking consideration, we reach the same conclusion.

Judgment affirmed.