## No. 9124.

SUCCESSION OF JOSEPH ANGER.—ON OPPOSITION OF RICHARD
HUMBLE, TUTOR.

When there are two distinct immovables in a succession, both of which are subject to the
same first mortgage, and each subject to different second mortgages, the administrator
cannot, by provoking a sale of one immovable before the other, benefit the second mort-
gagees on the immovable unsold, to the prejudice of those on that sold, by the distribu-
tion of the entire price of the latter to the extinguishment of the first mortgage.

Although the right of the first mortgage creditor to take the proceeds is absolute, order will
be made, when the other immovable shall be sold, to make such distribution of the pro-
ceeds thereof as will leave the respective second mortgage creditors in the same position
as if both immovables had been sold and the proceeds of both marshaled for simultaneous
distribution.

APPEAL from the Twenty-third District Court, Parish of Iberville.
*Pope,* J.

*Samuel Matthews* for the Tutor, Appellant.

*David N. Barrow* for the Executrix, Appellee.

The opinion of the Court was delivered by

FENNER, J.    This succession owned two plantations, known as "For-
lorn Hope" and "Hermitage," both encumbered by mortgages.

With the exception of a vendor's mortgage and lien upon the undi-
vided half of " Forlorn Hope," P. S. Graves held the first mortgage
for about $16,000 on both plantations, constituted by the same au-
thentic acts.

C. P. McCan and others held second mortgages on the "Forlorn
Hope," while opponent, Richard Humble, tutor, held the second mort-
gage on "Hermitage."

The widow of Anger and executrix of his will, petitioned for sale of
all the property to pay debts, and both plantations were ordered to be
sold.

Pending the advertisement of this sale, it appears that certain par-
ties filed a suit claiming ownership of one-half of "Forlorn Hope,"
and in view of the damaging effect which this cloud upon the title
would produce upon the bidding, the executrix applied for and ob-
tained an order of court staying the sale of "Forlorn Hope."

The sale of "Hermitage," however, proceeded and was effected for
the price of $12,100, of which $4033 33⅓ was paid in cash and the
balance in interest-bearing notes maturing respectively on March 5,
1884, 1885 and 1886.

Thereafter the executrix negotiated an agreement with the mortgage creditors upon "Forlorn Hope," including P. S. Graves, by which they bound themselves to stay proceedings for foreclosure until December 1, 1883, and to permit her to cultivate the plantation under order of the court, upon conditions:

1. That the proceeds of "Hermitage," after satisfaction of prior privileges, should be applied to the reduction of the Graves mortgage; and,

2. That the net proceeds of the crop of 1883 should be applied to reduction of the mortgage indebtedness.

In accordance with this agreement, the executrix has filed a provisional account, in which she has distributed the cash portion of the price of "Hermitage," $3000, to P. S. Graves and the remainder to law charges and other special privileges, and has also placed thereon the whole of the credit portion of the price, amounting with interest to $9034 62 "to be applied to payment of mortgage of P. S. Graves."

The tutor, Humble, opposes this account on the grounds:

1. That his security having failed by the sale of the property and consequent extinguishment of his mortgage, he is entitled, though his debt be not due, to exact good security or immediate payment under Article 2055, C. C.

2. That the proceeds of the mortgaged property cannot be appropriated to payment of general privileges until the movables and other unencumbered property are exhausted.

3. That the whole proceeds of "Hermitage" cannot be appropriated to the first mortgage of Graves, which affected "Forlorn Hope" equally, but the proceeds of sale of both properties should contribute ratably to the acquittance of said first mortgage.

The judge a quo sustained the first ground of opposition in so far as to give the opponent tutor an immediate judgment for the amount of his debt, payable in the course of administration, and rejected his opposition in all other respects.

From this judgment the opponent has appealed, and the executrix has also filed answer in this court praying for a reversal of that part of the decree which awards the tutor an immediate judgment for his debt.

The solution at which we arrive of the third ground of opposition will aid in the disposition of the other two, and we will, therefore, consider it first.

It is obvious that if the course of the executrix in attributing the whole proceeds of "Hermitage" to the satisfaction of the Graves mort-

gage be approved without reserve, a most gross injustice will be done to the opponent tutor.

If the sale of the two plantations had proceeded, as originally ordered, simultaneously, no one would dispute that the proceeds of both would have been marshaled together and the first mortgage of Graves would have found satisfaction ratably from the proceeds of of each, leaving the surplus of either to go to the satisfaction of the subsequent mortgages bearing on it.

Can this just and equitable result be altered by the mere fact that, on the prayer of the executrix and for the advantage of the estate, the court saw fit to postpone the sale of "Forlorn Hope?"

What reason could exist for permitting such a vital change in the rights of parties as to allow the whole proceeds of "Hermitage" to be absorbed by the first mortgage, to the entire destruction of the second mortgage thereon and to the exclusive aggrandizement of the second mortgages on "Forlorn Hope," merely because the sale of the latter was postponed?

We are aware that, under our Code, Article 3404, the plea of discussion cannot be opposed to a special mortgage creditor; and that it has been held by this court that, though the creditor holding a special mortgage bearing on two properties, belonging to different third possessors, remit or release his mortgage on one of the properties, that will not prevent him from enforcing his entire mortgage against the other property. Powell vs. Hayes, 31 A. 789.

But no such state of case is presented here.

The Graves mortgage was and remained in full efficacy on both plantations at the date of the mortgagors' and owner's death.

The rights of creditor are fixed at the debtor's death, and no one can, by superior diligence, or by dealing with the executor, or by the executor's own course, get an advantage over others. Board vs. Lemée, 12 Rob. 243; Boyce vs. Escoffie, 2 A. 872.

It is not a question of discussion opposed to the special mortgage creditor. He is undoubtedly entitled to be paid in full before any part of the proceeds of either property can be touched by any second mortgage creditor. It is a mere question of distribution between second mortgage creditors.

It was the duty of the executor, under ordinary circumstances, to sell both plantations simultaneously and to satisfy the first mortgage, according to law, out of the joint proceeds, thus preserving the rights

of the second mortgage creditors on each to the extent of the proceeds remaining for their benefit.

The rights of the latter cannot be affected by the fact that one plantation was sold before the other.

The opponent asks that we should order the proceeds of "Hermitage" to be held by the executor and distribution deferred until all the property be sold, and the creditors shall be ranked and classed according to their legal rights. The difficulty in the way of this lies in the absence of right to restrain the first mortgage creditor in his absolute right to receive the proceeds of sale of the mortgaged property. He has no concern with the order of sale. His mortgage is *tota in toto, tota in qualibet parte.* Bagley vs. Tate, 10 Rob. 45.

The proceeds as fast as reduced to cash belong to him and he has the right to take them until his debt be discharged.

We shall effect the same purpose, however, so far as the rights of opponent are concerned, by reserving and recognizing his right, when the "Forlorn Hope" plantation and other property shall be sold, to require such a distribution of the proceeds as will award to him the same amount in satisfaction of his claim as he would have received had the proceeds of "Hermitage" been present for simultaneous distribution.

This disposes of the opposition based on Article 2055 C. C. since it does not appear that there will be any failure or insufficiency of security; and necessitates the reversal of the immediate moneyed judgment in his favor.

The general privileges and administrative expenses allowed in the account are entitled to payment. It is not made to appear that there are movable or unencumbered property for their payment, undisposed of. They are not, however, entitled to payment exclusively out of the proceeds of "Hermitage," to the prejudice of opponent; and we shall reserve his rights as to these also in the final distribution.

It follows that the actual distribution of present funds made by the account is not to be disturbed, but without prejudice to opponent's ultimate rights in the final settlement.

For these reasons as well as for those assigned in the concurring opinion of the Chief Justice, it is, therefore, ordered that the judgment appealed from, in so far as it awards to Robt. Humble, tutor, an immediate judgment for the sum due to him, payable in the course of administration, be now annulled, avoided and reversed, without prejudice to his rights to recover his said debt when the same shall become due, or to his mortgage

rights, that the said judgment be further amended by reserving and recognizing the right of said Robert Humble, tutor, when the "Forlorn Hope" plantation and other properey of the succession shall be sold, to require such a distribution of the proceeds as shall secure to him the same amount in satisfaction of his claim as he would receive if the present distribution had not been made and if the proceeds of "Hermitage" and other property distributed in the present provisional account had been present for simultaneous distribution; that in other respects said judgment be affirmed, costs of this appeal to be equally divided between said Humble, tutor, and the succession.

## CONCURRING OPINION.

BERMUDEZ, C. J. It cannot be doubted that, where it is sought to enforce a mortgage granted on two or more pieces of real estate, and in the absence of stipulation to the contrary, it is optional with the mortgagee who represents the entire claim, to have the property sold, either in block or separately, for the reason that he can subject one piece only to his claim and if he chose, release the others entirely, and that subsequent mortgages, if any have become such, exposed to that eventually.

It is likewise clear that the mortgagor has also the right to require that the real estate encumbered be divided as described in the act of mortgage and sold accordingly, as he has the privilege of pointing out to the sheriff which of his property shall be *first* seized and sold.

But the exercise of such a right by the mortgagor necessarily must be subordinate to the condition, that no injury or damage shall thereby result to other creditors. Were it not so, it would lie in the power of the mortgagor to benefit a subsequent mortgagee on one piece to the detriment of another mortgagee on other property.

That which the mortgageor himself is powerless to accomplish, neither his syndic, his executor nor his heirs can be permitted to do. They have no greater power to harm his creditors than he himself possesses.

Particularly must this be the case in the present instance, as the tutor could neither resist the orders of court nor give any consent which a mortgagee *sui juris* could have given, so as in the least to impair the validity and solidity of the conventional mortgage which he claims to have as the representative of the minors. 11 R. 533; 3 A. 664; 6 A. 61, 361; 9 A. 602. I, therefore, concur in the decree.

NOTE—The other Justices concur in this opinion.