ing language of the brief being, "Murray is without fault and the sale a la folle enchere cannot proceed against him."

The exceptions (in the instant case) were, however, overruled; the defendant in injunction answered, and after hearing on the merits, there was judgment in favor of Murray, perpetuating his injunction against the present attempt to sell a la folle enchere and ordering the sheriff to return to him the amount of his deposit, and, from the judgment so rendered, the defendant in injunction (plaintiff in seizure) has appealed.

## Opinion.

The proposition relied on, that Murray could participate in this court, as an interested party, in the litigation to which he had been cited, and, after taking his chance of a favorable judgment, escape the consequences of an unfavorable one, by setting up that the clerk of the district court had omitted to file the answer which had been prepared and tendered in his behalf, and, hence, that he was not a party to the suit or the judgment cannot be entertained. Moreover, in the petition filed by him in the present suit, he distinctly alleges that he was made a party defendant in the former suit, and he cannot be heard to deny 'it. Our learned brother of the district court seems to have thought that the issues presented in the former suit did not concern Murray, but, as the question there presented was, whether the property of which he was the adjudicatee should be sold a la folle enchere, and as that is the question which is presented here, it seems to us that he was interested in the former suit, or if it could be said that he was not, then, that it must follow that he is not interested in the present suit.

In the former suit, this court said:

"This is an injunction suit to prevent a sale a la folle enchere and to annul the adjudication upon which the attempted sale a la folle enchere is predicated. Plaintiff's property was seized and adjudicated under executory process, and, the purchaser failing to comply with his bid, the property was readvertised to be sold a la folle enchere, and the plaintiff brought the present injunction suit. * * * The injunction is unfounded and was properly dissolved."

And the judgment appealed from, by which the injunction was dissolved, was affirmed. This judgment, we think, constitutes res judicata, quoad the issues here presented; a conclusion which renders it unnecessary that we should consider other points presented on behalf of the defendant in injunction.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed; that the demands of A. H. Murray be rejected; and that his intervention be dismissed and his injunction dissolved, at his cost in both courts.

(41 South. 99.)

No. 15,800.

BLANCHARD et al. v. NAQUIN (FOLSE & FROST et al., Interveners).

(March 26, 1906. Rehearing Denied April 23, 1906.)

1. MARSHALING ASSETS—SCOPE OF REMEDY—MORTGAGE COVERING SEPARATE TRACTS.

Where a single first mortgage rests upon two plantations, owned by A. and B., respectively, though, as between such owners, the entire debt so secured is due by A., the plantation of B. cannot be made to contribute to the payment thereof, unless the proceeds of the sale of A.'s plantation prove insufficient to satisfy the mortgage in full, and, whilst the mortgagee may seize both plantations, the mortgagor, on the other hand, may demand that the plantation of A., alone, be sold, if, by such sale, sufficient may be realized to satisfy the mortgage, and if A., the mortgagor, neglect or refuse to make such demand, B., as his creditor, having an interest, may exercise A.'s right.

2. SAME—APPLICATION OF FUND.

Where two plantations held by A. and B., respectively, are affected by a single first mortgage, and the titles show that, as between the owners, A. has assumed the debt, and has agreed that in the event of B.'s paying any part of it, he shall be subrogated to the rights of the creditor and mortgagee, neither A., nor any

creditor of his who was party to the contracts by which the titles were acquired or who claims under a mortgage inscribed against his plantation after the registry of those titles can take anything from the fund realized by the sale, under the first mortgage, of the two plantations, until B. is reimbursed the amount contributed by his plantation to the satisfaction of said first mortgage, to which to the extent and by virtue of such contribution and quoad the parties mentioned, he becomes subrogated.

3. MORTGAGES — EXTENSION — RELEASE OF LIEN.

The holder of notes secured by a mortgage containing the pact de non alienando does not lose his mortgage by consenting with the maker of the notes and mortgagor, without consulting a third person to whom the mortgagors property may have been sold, to an extension of the time for the payment of the notes.

(Syllabus by the Court.)

Appeal from Twenty-Seventh Judicial District Court, Parish of Assumption; Paul Lèche, Judge.

Action by Agnes R. Blanchard, tutrix, and others, against Clovis Naquin. Folse & Frost and others intervene. Judgment for plaintiffs, and Folse & Frost appeal. Reversed, and judgment rendered.

Beattie & Beattie for Folse & Frost, appellants. Pugh & Pugh, for appellees Agnes R. Blanchard and others. Edward Nicholls Pugh, for appellees W. B. Bloomfield and Mrs. C. Naquin.

## Statement.

MONROE, J. Plaintiff having proceeded via executiva to enforce payment of certain mortgage notes, Folse & Frost and some other persons, asserting mortgages upon the property seized, intervened, and there was a litigation which resulted in a judgment from which this appeal is prosecuted. The facts as they appear from a very badly prepared transcript are as follows: On March 12, 1898, Clovis Naquin (defendant) purchased an undivided half interest in Sans Nom plantation (the other half interest in which he already owned), and the whole of Cleveland plantation. In payment of the price, he assumed an interest-bearing debt of $3,500, secured by mortgage on Sans Nom plantation, in favor of H. N. Dupont, and gave his 12 notes for $1,500 each, secured by a single mortgage, bearing on both plantations, and for the purposes of which, his wife intervened and renounced her rights. The notes so given were divided into groups of three and, as thus divided, matured in one, two, three, and four years, respectively. The notes constituting the group which matured in one year were paid, the others were acquired by Dr. Blanchard, who, by agreement with their maker, extended the time for their payment three years beyond that originally fixed, and, thereafter, upon the death of Dr. Blanchard, they passed into the hands of the plaintiff, as widow and tutrix, and are the notes upon which this suit is brought. In the meanwhile (upon April 4, 1898) Naquin sold to Oscar A. Folse (Mrs. Naquin renouncing her rights) an undivided one-third interest in the two plantations mentioned, and, in part payment of the price, Folse assumed one-third of the debts represented by the Dupont mortgage and by the 12 notes of $1,500 each which Naquin had issued in buying the property. On July 29, 1899, Naquin sold to Folse his remaining two-thirds interest in Cleveland, and by separate act Folse reconveyed to Naquin the one-third interest in Sans Nom which he had purchased from him the year before. In the sale first mentioned Naquin declares "that there are mortgages against the property herein sold, but that he binds and obligates himself to hold the purchaser harmless from the effects thereof," that "in case the said Oscar A. Folse has to pay any of the mortgages mentioned * * * he shall be subrogated to all the rights of action, privileges, and mortgages of the holders," and Mrs. Naquin intervenes in the act, and renounces all claim that she might have against the property sold. In the

sale from Folse to Naquin, the latter, as part of the price of the property purchased, reassumes the obligation to pay the debt represented by the Dupont mortgage and also the debt bearing on both plantations, represented by the notes here sued on, in favor of which (as we have stated) Mrs. Naquin had already renounced whatever rights she might have had. On September 9, 1899, Folse sold to H. W. Frost an undivided one-half interest in Cleveland, so that when this suit was filed he and Frost were sole owners of that property. It appears that D. H. Roussel had in the meanwhile acquired an interest in Sans Nom which was cultivated by the firm of Naquin & Roussel (Clovis Naquin being the senior member), but whether at the date of the seizure the plantation was owned by Naquin alone or by Naquin & Roussel does not appear. Three of the notes held by plaintiff fell due, as extended, in March, 1903, and, in June of that year, plaintiff obtained executory process under which both of the plantations were seized and offered for sale. Thereupon Folse & Frost intervened, alleging that Sans Nom, alone, would satisfy the claim sued on, that the seizure of Cleveland was unnecessary, and that the seizure of both plantations was the result of fraudulent collusion between the plaintiff and the defendant, the purpose of which was to favor the wife of the latter by having the claim of the plaintiff paid in part from the proceeds of the sale of Cleveland, thereby enabling Mrs. Naquin to realize upon her inferior mortgage, resting on Sans Nom, alone. Interveners further allege that if their property were otherwise bound for the debt sued on it was released by reason of the fact that interveners occupied the position of sureties, and the time for the payment of the debt due plaintiff was extended without their knowledge or consent; and they make certain other allegations, and pray that un-

til the further order of court, plaintiff's seizure be restricted to Sans Nom, and, in the event of that plantation selling for enough to satisfy her claim, that no further writ issue against Cleveland, or, in the alternative, that the two plantations be appraised and sold separately in order that a just and equitable distribution of the proceeds be made. Upon this intervention, a rule nisi issued, to which, as we infer, the plaintiff in the seizure and some persons asserting mortgages of inferior rank were made parties, and after hearing there was judgment denying the application of interveners, save in so far as to order that the two plantations be appraised separately. Some time later plaintiff and interveners, through their counsel, entered into a written agreement, from which we make the following excerpts, to wit:

"In the above case it is agreed * * * for the purpose of saving costs and * * * litigation, and to subserve the interests of all parties, that the property seized is to be considered sold, and the proceeds in court for distribution. It is agreed that the proportion to be contributed is to be, respectively, $29,000 for the Sans Nom plantation, and, if any at all by the Cleveland plantation, the sum of $3,122.50, which sums are to be considered in court for distribution to the various mortgage creditors and the owners of Cleveland plantation in accordance with their respective rights under their sales and mortgages. It being distinctly understood that the amount of contribution due by the Cleveland plantation (if any contribution is due at all) is $3,122.50, no more and no less, and the amount of contribution due by the Sans Nom plantation is $29,000, and no more and no less. It being distinctly understood that the owners of Cleveland plantation shall be at liberty to prove, if prove they can, that no contribution at all is due by said lands, and that the use of the word contribution heretofore made is not to be taken as an admission that anything at all is due, but simply that if anything be due by it towards paying the mortgages due by Clovis Naquin, that is the full amount due by it, and with the right of the owners to show that this amount shall be returned to them, and to none other of the creditors.

*       *       *       *       *       *       *

"The contention as to the distribution of the fund in court is to be made by third oppositions of the various parties interested, with the right to each and every one to contest the right and privilege of the others, as in concursus, to the fund for distribution, with the understanding

that the district court has ruled that Cleveland plantation must be sold for the payment of the mortgage debt, but under a separate appraisement, the said contribution, if any, to be the sum of $3,122.50, but that the said question, as to the right of separate sale, is to be presented on appeal from the said interlocutory judgment, on the final trial of these issues as fixed by the trial on third oppositions, the said interlocutory judgment not to be held to estop the owners of Cleveland plantation, but the amount due on the Blanchard mortgage * * * is not contested in so far as the amount of $18,500 is concerned; but the question whether or not any part thereof shall be finally taken from the Cleveland plantation, so as to leave a greater amount to the mortgages of Mrs. Clovis Naquin and Wm. B. Bloomfield, is to be settled by the court in accordance with the rank of those mortgages, the rights of the owners of Cleveland plantation and the law. The contest to be carried on as above stated, in concursus, with the full right to each creditor to contest the right of the other save only as to the amount due Mrs. Agnes Blanchard, Tutrix. * * * It is understood that the owners of Cleveland plantation can only claim out of the total amount in court the sum of $3,122.50, that being the sum taken from their plantation to make up the sum in court, and they have no claim on the $29,000 coming from the Sans Nom plantation save to see it distributed to the creditors in such a manner that no claim can be urged by any of them against the Cleveland plantation fund. In other words, the owners of the Cleveland plantation, on being returned the amount coming from the sale of their plantation, have no right or interest in the other sum save to have it distributed so as to pay the debt due to Mrs. Blanchard, tutrix, and any other creditor having rights superior to her, if any there be, so as to entirely relieve the Cleveland plantation from any contribution towards paying the debts of the seized debtor. The whole matter to be passed upon in one trial, so as to save cost, expense, and delay."

It may be as well to state (though somewhat in anticipation) that so far as we can gather from the record, the following are the mortgages that are to be considered in distributing the fund on hand, to wit:

"(1) A conventional mortgage to secure a debt for $3,500, bearing 8 per cent. interest per annum from June 13, 1895, recorded against Sans Nom Plantation in favor of H. N. Dupont, June 14, 1895. (This is the most ancient mortgage which appears upon the certificate filed in evidence, but, as the name of Dupont is not mentioned in the judgment appealed from, nor in the brief of counsel, and as Mrs. Coullier [or possibly Soullier], though not connected therewith by any evidence that we find, is recognized by the judgment and by all the counsel, as holding a mortgage which entitled her to take $4,500 from the fund to be distributed, we conclude that she must represent the Dupont mortgage. Counsel for interveners intimate that her mortgage takes precedence of that of plaintiff which would seem to be correct; but the judgment ranks it next after that of plaintiff, on Sans Nom plantation, and there is no one before the court complaining of that disposition.)

"(2) The mortgage securing the debt sued on, which, by admission, calls for $18,500, recorded against both plantations, June 16, 1898.

"(3) A mortgage for $5,600 in favor of Mrs. Naquin, wife of the defendant in the seizure, resulting from the registry of her paraphernal claim against her husband July 2nd, 1896. (This claim was recorded against both plantations for a larger amount, but was renounced by Mrs. Naquin as against the whole of Cleveland, and as against one-third of Sans Nom, in the acts by which her husband sold those interests to O. A. Folse. By this litigation the mortgage is conceded to bear exclusively on Sans Nom, to the extent of $5,600, whether upon two-thirds interest or upon the whole, being a question, perhaps, between Mrs. Naquin and interveners.)

"(4) A mortgage for $6,000 in favor of W. B. Bloomfield, imposed, by Naquin and Roussel, as owners of that property, upon Sans Nom plantation, recorded July 22, 1902. (This mortgage was executed for a larger amount, to secure a debt contracted for planting purposes, but, as appears from the evidence in the record, should be reduced to the amount stated.)

"There are other mortgages inferior in rank resting on Sans Nom, but the fund on hand will not reach them, and they need not be considered. So far as appears there are no mortgages on Cleveland plantation save that of the seizing creditor. Resuming the chronological statement of the case, the proceeds of the sale of the two plantations being constructively in court, the interveners filed a third opposition, in which they set forth their title and the obligations of the defendant in the seizure with respect thereto, and reiterate their allegations to the effect that the claim of the plaintiff can be satisfied from the proceeds of the sale of the property belonging to said defendant, and that recourse to the proceeds of the sale of their property is unnecessary, and to the effect that with respect to said claim they occupy the position of sureties, and are discharged by the granting, without their consent, of time for its payment, and they further allege that Mrs. Naquin can collect nothing on account of her claim because she has no judgment against and is a partner in community with her husband, and because of her renunciations; and that Bloomfield can take nothing because his claim is, in any event, inferior in rank to that of Mrs. Naquin (who never renounced in his favor) and, so far as the proceeds of the sale of Cleveland are concerned, arose after the sale of the plantation to opponents, and purports to be secured by a mortgage which bears only on Sans Nom.

"Mrs. Blanchard, plaintiff in the seizure, denies the charge of collusion, and alleges that

her mortgage is indivisible, and must be enforced against all the property affected by it and the proceeds thereof, and that opponents were without right or interest to raise any issue except as to the amount of the contribution of the tract (Cleveland) owned by them. Bloomfield, by intervention and third opposition, sets up his claim against Naquin and Roussel, and his mortgage on Sans Nom plantation, and alleges that his debtors are insolvent, and that Mrs. Blanchard, as holder of a mortgage bearing on both plantations, is bound 'to apply the $3,122.50 arising from Cleveland, pro tanto, to her mortgage debt, and this being so, that opponents, Folse & Frost, have no interest in * * * the distribution of the proceeds arising from the Sans Nom plantation.' "

After hearing, the judge a quo held that the two plantations had been appraised separately in order that if the total amount realized from the sale should exceed that due to the plaintiff, the surplus might be equitably distributed among the second mortgage creditors and the owners; that, as the result of the sale, Sans Nom plantation, belonging to Clovis Naquin, had realized $29,000 and Cleveland, belonging to Folse & Frost, $3,122.50 making a total of $32,122.50; that plaintiff's mortgage bearing on both plantations amounted to $18,500; that there were no mortgages of inferior rank on Cleveland, and that Sans Nom was burdened with mortgages, inferior to that of the seizing creditor, in favor of Mrs. Coullier, for $4,500, in favor of Mrs. Naquin, for $5,600, and in favor of W. B. Bloomfield, for $6,000; that the proceeds of the two plantations should contribute, pro rata, to the payment of the Blanchard claim; that the surplus thereafter remaining from the proceeds of Sans Nom should be paid to the claimants holding mortgages on that plantation, in the order in which the mortgages were recorded, and that the surplus, so remaining from the proceeds of Cleveland, should be paid to the owners of that property; and a decree was entered accordingly, save that a slight error was committed in finding that the pro rata due, upon the theory of the opinion, by Sans Nom, was $16,696.25, instead of $16,701.69, and that due by Cleveland, $1,803.75, instead of $1,798.31. A new trial was however granted, and, in his reasons for the judgment finally rendered, the learned judge said that the question to be decided was, not the amount to be contributed by each plantation—that question having been determined by the agreement of the parties—but merely whether any contribution should be made, and, holding that the question so stated must be decided in the affirmative, he ordered that the fund on hand be distributed as follows, to wit:

First, to Mrs. Agnes R. Blanchard,
   Tutrix ........................ $18,500 00
Second, to Mrs. Soullier..........   4,500 00
Third, to Mrs. Naquin............   5,600 00
Fourth, to W. B. Bloomfield, balance   3,522 50
                            ————
   Total ..................... $32,122 50

From the judgment so rendered, Folse & Frost have appealed.

### Opinion.

Clovis Naquin, having sold the property to Folse with full warranty of title, and having been paid the price, could claim nothing from the proceeds of a subsequent sale of Cleveland, nor could he confer upon his creditors the right to have claims against him which did not exist when the property was sold, or which did not affect it, or (as is the case of Mrs. Naquin's claim) were renounced in so far as they affected it, satisfied from the proceeds of that plantation. By the operation of the judgment appealed from Cleveland is made to contribute $3,122.50 to a fund from which three such creditors of Naquin (the fully paid vendor) take, in the aggregate, in payment and part payment, of their claims against him, the sum of $13,622.50, whilst his vendees, the owners, take nothing. It is evident, however, that if there were no claims against Sans Nom plantation (belonging to Naquin) and Cleveland (belonging to Folse & Frost), except that of the seizing creditor, and, if the sale of the two plantations created (as it has done) a fund more

than sufficient to pay the seizing creditor, Naquin could not call on Cleveland to contribute to such payment, since, in selling that property and in repurchasing the one-third interest in Sans Nom, he warranted his vendees against that claim and agreed to pay it, himself, and would, therefore, be bound to pay it from the proceeds of his own property; and it is equally evident that as he could take nothing from the proceeds of Cleveland, his creditors, to whom we have referred, and who can take nothing from those proceeds on their own account, can take nothing by reason of their claims against him, either for the purpose of paying the claim in question, or for the payment of their own claims.

Conceding, then, arguendo, merely that a creditor holding a single mortgage bearing on a number of separate estates has the absolute right to sell all of them, even though the sale of one will produce enough money to satisfy his debt, nevertheless, when the sale has been made, and the fund resulting therefrom has been returned into court, it is a question for the court, and not for the seizing creditor, to determine, whether the debt due the latter shall be paid from the whole fund or from the proceeds of a particular estate, since it may happen (as in this case) that payment from the whole fund will operate unjustly to other persons interested therein, or (as in some other case) that the payment from the proceeds of one of the estates, instead of from the whole fund, will operate unjustly to such persons, and the matter is one in which the seizing creditor, who gets all that is due him, has no interest and concerning which he has no right to be heard. The creditor holding a single mortgage bearing upon several estates, or distinct pieces of property, has, however, no absolute right to force the sale of all when the sale of less than all would suffice to satisfy his debt. He may, agreeably to the au-

thority expressly conferred by Code Prac. art. 648, seize all the property affected by his mortgage; but, on the other hand (quoting the language of Code Prac. art. 650):

"Nevertheless, the debtor whose land shall have been seized, shall always be entitled to demand that a portion only, which he shall designate, shall be sold, if that portion be sufficient to satisfy the judgment; but, if it be insufficient, a sale of the other portions shall be made."

It is true that a mortgage is in its nature indivisible, but the indivisibility is declared by the law in a single sentence, which reads:

"It is, in its nature, indivisible, and prevails over all the immovables subject to it, and over each and every portion." Civ. Code, art. 3282.

From which it follows that one must proceed upon the mortgage for the recovery of the whole amount due, and that where a mortgage rests upon property, to a portion of which the mortgagor has no title, the mortgagee can enforce it for the full amount, against that portion to which the mortgagor has title. But it does not follow that the mortgagee is obliged to cause all the property mortgaged to be sold when it is unnecessary for the satisfaction of his mortgage, or that the article of the Code of Practice, which confers some rights upon the mortgagor in the matter of the ultimate enforcement of the mortgage, is thereby abrogated or repealed. On the contrary, if there were any conflict between the two articles cited, as to the manner of proceeding to enforce the mortgage, the article of the Code of Practice would control as that Code is particularly addressed to the regulation of proceedings for the enforcement of claims (Richardson v. Richardson, 38 La. Ann. 640), and, besides, took effect in September, 1825 (Williams v. Holloway, 11 La. 517) and is therefore a later expression of legislative will than the Civil Code which was declared operative in May of that year (Xanpi v. Orso, 11 La. 60).

These views find support in the cases of Gaiennie v. Questi et al., 3 La. 433, Powell v. Hayes, 31 La. Ann. 789, and Mitchell v. Log-

an, 34 La. Ann. 998, where it was held that the mortgagee had the right to enforce his mortgage against part of the property affected, but (in the case first mentioned) that the mortgagor might object that such part was more than sufficient to satisfy the debt; and in the cases of Bauduc v. Conrey, 10 Rob. 466, Lambert v. De Santos, 10 La. Ann. 725, and Taylor v. Graham, 18 La. Ann. 656, 89 Am. Dec. 699, in which it was held that, where the mortgagor does not demand that a separate appraisement and sale be made, he cannot afterwards complain of the sale in block of the entire property affected by the mortgage.

It may be said that in the instant case the debtor did not demand that the two plantations be appraised and sold separately, and it is true that he did not, his interest lying the other way; but Folse & Frost made that demand, and we are of opinion that it was competent for them to exercise the right of the defendant, their debtor, in that respect. Lynch v. Kitchen, 2 La. Ann. 844; Tompkins v. Prentice, 12 La. Ann. 470; Forstall v. Consolidated Ass'n, 34 La. Ann. 775. The appellants, it may be remarked, have acquiesced in the sale, and are asking only that, from the total amount realized, there be returned to them the proceeds of their property, to which, if the foregoing reasoning and statement of the law be correct, they are clearly entitled.

Counsel for the appellees, in support of the supposed necessity (arising from the indivisibility of the mortgage) for selling the property, in block. refer the court to the cases of Hughes Adm'r v. Patterson et al., 23 La. Ann. 679, and Succession of Anger, 36 La. Ann. 252. In the first case the question presented was whether the vendor, having sold a single tract of land to several vendees, who gave their obligation, in solido secured by a single mortgage, for the price, could sell the mortgaged property without making all the

obligors parties to the suit—a question which was correctly decided in the negative, and which has no bearing on the issues now before the court. The other case (Succession of Anger), is equally without application, or, if applicable at all, does not sustain the learned counsel in his position. In that case there were two plantations, Forlorn Hope and Hermitage, belonging to the same succession, both of which were subject to the same first mortgage, and upon each of which there were different second mortgages. The executrix obtained an order for the sale of both plantations, to pay debts, but, for certain reasons, the sale of Forlorn Hope was stayed, whilst Hermitage was sold, and, in filing her account, the executrix attributed, practically, the entire proceeds to the payment of the first mortgage, the result being that Hermitage contributed, say, $12,000 to the payment of the first mortgage, of say, $16,000, bearing upon both plantations, and that there was nothing left for the second mortgages, whilst Forlorn Hope contributed nothing to the first mortgage, and there being but $4,000 needed, was likely to yield a dividend to its second mortgages. It does not appear that any one objected to the sale, as made, but, by way of opposition to the account of the executrix, the tutor of certain minors, holding a second mortgage on Hermitage, objected that the whole proceeds of Hermitage should not be appropriated to the first mortgage, for which Forlorn Hope was equally bound, and the court sustained the objection, holding that to do otherwise would be to perpetrate a gross injustice; and it was ordered in effect that the right of the tutor be reserved, and that, upon the sale of Forlorn Hope, he be allowed to participate in the distribution of the proceeds to such an extent as to place him in the same position that he would have occupied if the two plantations had been sold at the same time. It will thus be observed

that in the case relied on the two plantations belonged to the same debtor, whose creditors occupied the same relation to him and to the plantations, respectively; whereas, in the instant case, the debtor owned but one of the plantations and was bound by the sale which he had made of the other to hold his vendees harmless with respect, not only to his own particular creditors, but with respect, also, to the debt which was secured by the mortgage on both plantations. It will also be observed that the tutor, being a creditor of the owner of both plantations, held a second mortgage on Hermitage, and that, whilst the holders of the second mortgages on Forlorn Hope were entitled to be paid from the proceeds of that plantation, he was equally entitled to be paid from the proceeds of Hermitage, and that it was held that his rights could not be defeated by the separate sale, though it was not attacked or set aside as invalid; whereas, in the instant case, the first mortgage alone bore on both plantations, and as between the owners of Sans Nom and the owners of Cleveland, the former owed the whole debt by reason of his having assumed it, and as between him and his creditors, on the one hand, and owners of Cleveland, on the other, neither the latter nor their property were ever bound, since the debts due to those creditors were not their debts, and never bore upon their property. Other differences could, perhaps, be pointed out, but it is hardly worth while. It is enough to say that the opinion and decree of the court in the matter of the Succession of Anger is to be construed with reference to the facts of the case, and that, so construing it, we find in it nothing at all inconsistent with the views here expressed.

Considering the matter from another point of view, Naquin, in selling the two-thirds interest in Cleveland to Folse, bound himself to hold the latter harmless with respect to the mortgage here sued on, and agreed that, in the event of Folse being held therefor, he should be subrogated to the rights of the holder, and, in repurchasing from Folse the one-third interest in Sans Nom, he reassumed the entire debt secured by that mortgage. Mrs. Naquin had originally waived and renounced her claim as against both plantations in favor of this mortgage, and she intervened in the sale made by her husband (of the two-thirds interest in Cleveland), thereby becoming a party to the stipulations of that contract, as between Naquin and Folse, and also for herself, renouncing, in favor of the vendee, Folse, whatever right or claim she might have in or against Cleveland plantation. As for Bloomfield, he was not at that time a creditor of Naquin, and, when some three years later he became a creditor, he accepted as security for his claim a mortgage on Sans Nom plantation, inferior in rank to that here sued on, to that in favor of Dupont, and to that in favor of Mrs. Naquin, and his mortgage was also subject to the other conditions by which the property was affected, one of which was that Naquin, the owner and mortgagor, had assumed, as part of the purchase price (of the interest that he had acquired from Folse) the obligation of paying the entire debt represented by the first mortgage. Whilst, therefore, quoad the holders, the mortgage sued on rested on Cleveland as well as on Sans Nom, and the owners of both plantations were bound by it; quoad those owners, inter sese, and quoad Mrs. Naquin and Bloomfield, Sans Nom was bound for the whole mortgage, and the owner of Sans Nom, as also the creditors named, are bound, by virtue of the contracts to which they are parties, and of the law, for the consequence of the payment of that mortgage, or any part of it, from the proceeds of the sale of Cleveland, that consequence being that the owners of Cleveland become thereby subrogated to the rights of the mortgagee, and hence are entitled to

be reimbursed the amount of such payment from the fund derived from the sale of the mortgaged property before anything can be claimed therefrom by the owner of Sans Nom or his said creditors. Civ. Code, art. 2161; Baldwin v. Thompson, 6 La. 479; King v. Dwight, 3 Rob. 2; Gay v. Blanchard, 32 La. Ann. 501; Hancock v. Holbrook et al., 40 La. Ann. 53, 3 South. 351; Burbank v. Buhler, 108 La. 39, 32 South. 201; Ledoux v. Rucker, 5 La. Ann. 500; Laurent. Cours Elementaire, Code Nap. art. 1251; Larombiere (Code Nap. art. 1251) tome 3, § 43; Marcade, p. 543, Code Nap. art. 1251.

We do not concur in the view entertained by the counsel for the seizing creditor (as also Mrs. Naquin and Bloomfield) that the owner of Cleveland plantation would, in any event, have been precluded by the agreement mentioned in the statement which precedes this opinion from contesting the amount for which their property should be held liable. As we interpret that agreement, it brought constructively into court the proceeds of the two plantations which had not at that time been sold, and fixed the amounts (assumed to have been) realized by each; but it did not bind the parties in any other respect. In view, however, of the conclusion which has been reached that Cleveland is not bound to contribute at all to the payment of the debt due to the seizing creditor, for the reason that the amount realized from the sale of Sans Nom is sufficient to pay that debt, in full, the difference of opinion between this court and the court a qua as to the meaning of the agreement is of no consequence. The contention that Folse should be regarded as a surety, quoad the notes sued on, and that he and his property were released by the fact that the time for their payment was extended without his consent, cannot be maintained. Dr. Blanchard held the notes of Naquin; he knew that the mortgage by which they were secured contained the pact de non alienando and that Naquin could not alienate the property affected so as to prejudice it, and he was not, therefore, interested in knowing, nor does it appear that he did know, whether Naquin had sold the property or not. To hold under such circumstances that the (unknown) purchaser was his (unknown) surety, and that he lost his mortgage by dealing with the only debtor whom he knew or was bound to know would be to announce a doctrine for which we find no support in either law or reason.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and, proceeding to render such judgment as should have been rendered, it is further adjudged and decreed that after deducting therefrom the costs of this litigation the fund on hand be paid in full satisfaction, each, in the order in which they are stated, and so far as the fund will permit, of the claims, as represented by the following litigants, to wit:

| | |
|---|---|
| Mrs. Agnes R. Blanchard, Tutrix, etc. | $18,500 00 |
| Oscar A. Folse and Henry W. Frost | 3,122 50 |
| Mrs. Coullier | 4,500 00 |
| Mrs. Myrtyle Folse, wife of Clovis Naquin | 5,600 00 |
| William B. Bloomfield | 6,000 00 |

It is further adjudged and decreed that the costs of this appeal be included among those to be first deducted from the fund to be thus distributed.