(114 So. 709)

No. 28800.

D. R. SARTOR SONS & CO. v. BROWN.

In re D. R. SARTOR SONS & CO.

Oct. 31, 1927. On Application for Rehearing Nov. 28, 1927.

*(Syllabus by Editorial Staff.)*

1. **Mortgages ☞512—Transferees by separate transfers of mineral rights after mortgage recorded held not entitled to plea of discussion or orders withholding mineral rights from foreclosure (Rev. Civ. Code, art. 3404; Code Prac. art. 73).**

Where mortgagor, after mortgage on a single tract was recorded, transferred one-half of mineral rights to one person and the other half to another, *held*, under Rev. Civ. Code, art, 3404, and Code Prac. art. 73, neither mortgagor nor transferees of mineral rights had any right to interpose plea of discussion in mortgage foreclosure action; and transferees of mineral rights were not entitled to court orders requiring sheriff to offer land for sale on foreclosure without the mineral rights; remedy of transferees being to pay mortgage debt and thereby becomes subrogated to mortgagee's rights against land under Rev. Civ. Code, arts. 2161, 2217.

2. **Mortgages ☞554—Sheriff offering property at foreclosure sale without mineral rights could not be compelled to deliver deed including such rights.**

Where sheriff offered mortgaged property for sale under foreclosure sale without the mineral rights, he could not be compelled to give deed including such mineral rights to mortgage holder who made highest bid for the property, with announcement protesting against the withholding of mineral rights and claim that such sale carried mineral rights.

Action by D. R. Sartor Sons & Co. against Ann Brown, in which J. S. Belcher and Hugh C. Watson, as third opponents, separately obtained two orders withholding the mineral rights from the mortgage foreclosure sale, and plaintiff brings certiorari and mandamus to compel the district judge to rescind such orders. Mandamus proceeding dismissed.

Ellis & Ellis, of Rayville, for relator.

Theus, Grisham & Davis, of Monroe, and George Wesley Smith and Warren Hunt, both of Rayville, for third opponents respondents.

O'NIELL, C. J. D. R. Sartor Sons & Co. instituted executory proceedings against Ann Brown on a promissory note issued by her, on which the balance due was $455.10, with interest thereon at 8 per cent. per annum from the 16th of December, 1926, and 10 per cent. attorney's fee; the debt being secured by a conventional mortgage on Ann Brown's 60 acres of land. The property was seized by the sheriff, and, according to the notices served and published according to law, was to be sold on the 2d of July, 1927. On the

30th of June—two days before the date of sale—J. S. Belcher, claiming half of the mineral rights in the land, presented a petition to the district judge and obtained an ex parte order on the sheriff to withhold from the offer of sale half of the mineral rights, and not to sell or offer for sale said half of the mineral rights unless he failed otherwise to receive a bid sufficient to satisfy the plaintiff's claim, with interest, attorneys' fees, and all costs. On the 1st day of July—the last day before the date of sale—Hugh C. Watson, claiming the other half of the mineral rights, or an oil and gas lease on the land, presented a petition and obtained a similar ex parte order of court with regard to his lease or mineral rights. Watson claimed title under and by virtue of a mineral lease made by Ann Brown to J. A. Hale subsequent to the registry of the plaintiff's mortgage; and Belcher claimed title under and by virtue of a sale made by Ann Brown to R. C. Boisseau, of half of the mineral rights, also subsequent to the registry of plaintiff's mortgage. D. R. Sartor Sons & Co. promptly presented a petition, in which Ann Brown concurred, praying for a rescission of the orders obtained by Belcher and Watson. The district judge, after considering the matter, refused to rescind the orders which had been obtained by Belcher and Watson. Thereupon D. R. Sartor Sons & Co. gave notice of their intention to invoke the supervisory jurisdiction of this court, and, on the 14th of July, 1927, filed their petition for writs of certiorari and mandamus to compel the district judge to rescind the orders obtained by Belcher and Watson, respectively, on the 30th of June and 1st of July.

The record, which was sent up in response to the writ of certiorari, discloses that, at the sheriff's offering of the property for sale without the mineral rights claimed by Belcher and Watson, on the 2d of July, 1927, the attorneys for D. R. Sartor Sons & Co. pro-tested against the sheriff's withholding the mineral rights, and read aloud to the by-standers their written protest, in which they contended that, notwithstanding the orders of court obtained by Belcher and Watson, and notwithstanding the reservation announced by the sheriff, any purchaser from the sheriff would get title to all of the minerals and mineral rights in the land, free from any oil or gas lease; and that they (D. R. Sartor Sons & Co.) would bid for the property, at the sheriff's offering, with that understanding, and as though a reservation of the mineral rights had not been announced by the sheriff. The sheriff persisted in offering the land for sale without Belcher's half of the mineral rights, and subject to Watson's oil and gas lease; and, at the offering, D. R. Sartor Sons & Co. bid $1,200, which was the last and highest bid, and which was far more than enough to satisfy their claim, with interest, attorney's fees, and costs. The sheriff tendered to D. R. Sartor Sons & Co. a deed for the land, reserving Belcher's half of the mineral rights, and subject to Watson's oil and gas lease; but D. R. Sartor Sons & Co. refused to accept the deed tendered by the sheriff, and in turn tendered him $1,200, and demanded a deed for the land without any reservation of the mineral rights. The sheriff refused to comply; and, on the 7th of July—one week before the petition for mandamus was filed in this court—D. R. Sartor Sons & Co. proceeded by rule against the sheriff, in the district court, to compel him to give them a deed for the land without reservation of the mineral rights or incumbrance with the oil and gas lease. The proceeding so instituted was put at issue and is yet undecided in the district court, as far as the record shows.

The district judge, in his answer to the rule to show cause in this court why the relief prayed for by the relator should not be granted, insists that Belcher and Watson were entitled to the orders requiring the sheriff

first to offer the land for sale without the mineral rights, and not to sell or offer for sale the mineral rights, or the land with the mineral rights, unless he should fail to obtain a bid for the land alone sufficient to satisfy the writ of seizure and sale. The judge cites Blanchard v. Naquin, 116 La. 806, 41 So. 99, as authority for his orders. In that case, two plantations owned by different parties but subject to one mortgage were seized and sold in execution of the mortgage, and, by agreement of all parties concerned, the two plantations were sold by the sheriff and the proceeds were left, constructively, in his possession to await a decision as to whether the proceeds of the sale of the plantation owned by the parties who did not owe the mortgage debt should contribute to its payment. The agreement contained a stipulation as to the amount of the contribution if any should be made. The decision, therefore, must be read in connection with the agreement of the parties. The case has never been cited as if maintaining the proposition that a debtor whose debt is secured by a special or conventional mortgage, and who by the precise language of article 3404 of the Civil Code and article 73 of the Code of Practice is forbidden the plea of discussion, may, by afterwards transferring a part of the property to a third person, give him the right to a plea of discussion. On the contrary, in First National Bank v. Garlick, 137 La. 282, 68 So. 610, the court, citing C. C. art. 3404, and C. P. art. 73, repeated that a plea of discussion could not be opposed to a creditor having a special mortgage; and the court, citing Blanchard v. Naquin, said that the party invoking the plea of discussion was right only to this extent:

"That where a mortgage rests upon two properties belonging to different persons and is of less amount than the value of the two properties, the two properties must contribute in proportion to their value towards the payment of the mortgage; that one of them cannot be discriminated against in favor of the other, and made to bear more than its proportionate share of the common burden. Succession of Anger, 36 La. Ann. 252; Willey v. St. Charles Hotel Co., 52 La. Ann. 1592, 28 So. 182; Blanchard v. Naquin, 116 La. 806, 41 So. 99."

[1] In the present case, however, there was only one property burdened with the mortgage; and it is inconceivable that the mortgagor, being denied the right of discussion, could, by dismembering her ownership by transferring a part of it to a third person, give him the right to a plea of discussion. Our opinion, therefore, is that Belcher and Watson were not entitled to the orders of court requiring the sheriff to offer the land for sale separate and apart from the mineral rights, or subject to Watson's oil and gas lease, acquired after the plaintiff's mortgage was recorded. The law gave Belcher and Watson another remedy for the protection of the rights which they had acquired subject to the plaintiff's mortgage. They had the right to pay the debt and thereby to extinguish the mortgage as far as it affected their mineral rights and to become subrogated to all of the rights of the mortgagee as far as the land itself was affected. Rev. Civ. Code, arts. 2161 and 2217. But Belcher and Watson, having acquired their mineral rights subject to the plaintiff's mortgage, had no right to interpose a plea of discussion against his foreclosure of the mortgage.

[2] Because of the proceedings instituted by D. R. Sartor Sons & Co. in the district court, to compel the sheriff to give them a deed for the whole property, we have concluded to dismiss this proceeding and let the contest between D. R. Sartor Sons & Co. on the one hand and Belcher and Watson on the other hand be decided there. As the sheriff did not make any offering of the land for sale with the mineral rights and free from the oil and gas lease, he cannot be compelled to give D. R. Sartor Sons & Co. such a deed for the property. If, therefore, D. R. Sartor

'Sons & Co. are willing to take title for the land without the mineral rights and subject to Watson's oil and gas lease, that will end the contest; but, if they are not willing to take such title, there was no sale, and the property will have to be re-advertised and sold without the interposition of a plea of discussion, but with reservation of the right of Belcher and Watson, or either of them, to pay the debt at any time before the sale, and thereby extinguish the mortgage as to their or his mineral rights, and become subrogated to the mortgage as far as it otherwise affects the property mortgaged. Under these instructions and for these reasons:

This proceeding for mandamus is dismissed, at relator's cost.

### On Application for Rehearing.

PER CURIAM. In their application for a rehearing, D. R. Sartor Sons & Co. complain of our having instructed the judge of the district court how to decide the issues in the rule taken by D. R. Sartors Sons & Co. against the sheriff. We withdraw our instructions as to how the judge shall decide the issues in the rule on the sheriff.

Rehearing refused.