**LAWTON v. SMITH (DE SOTO SECURITIES CO., Intervener).**

No. 4505.

Court of Appeal of Louisiana.
Second Circuit.

March 6, 1933.

Parsons & Colvin, of Mansfield, and Stephens & Gahagan, of Natchitoches, for appellants.

S. R. Thomas, of Natchitoches, for appellee.

DREW, Judge.

G. Percy Smith was the owner of the following described two lots in the city of Natchitoches, La., to wit:

(1) That certain tract or parcel of ground in the city of Natchitoches, Natchitoches parish, La., on the west side of New Second street, having a front on said street of 46 feet, with a depth of 236 feet, being bounded on the north by G. Percy Smith, south by Dezendorf, west by G. Percy Smith, and east by New Second street. On this property there is located an apartment house; and

(2) That certain lot of ground situated in the city of Natchitoches, bounded on the north by Mrs. Annie Freeman, on the south by G. Percy Smith, on the east by New Second street, and on the west by the L. & N. W. right of way, on which property there is located a dwelling house, or residence. The two pieces of property are contiguous, as is shown by the following plat:

On December 28, 1926, G. Percy Smith executed a mortgage in favor of himself for the sum of $1,250, with 7 per cent. interest from date, and indorsed the note and transferred same to Dr. Lawton. The property described in the mortgage is as follows: "That certain house and lot situated on the west side of New Second street, bounded north by Mrs. Annie Freeman, south by E. L. Dezendorf, east by New Second street, and west by right-of-way of old L. & N. W. Railroad, being the same property acquired by G. Percy Smith from Mrs. Mena Johnson."

On June 19, 1926, he executed a mortgage on the property on which the apartment house is located (and hereafter spoken of

as apartment house property) in favor of himself for $2,000, with 7 per cent. interest from date, indorsed the note, and transferred it to Dr. Lawton.

On March 31, 1928, he executed another mortgage on the apartment house property for the sum of $2,000, in favor of himself, and indorsed the note and transferred it to Dr. Lawton.

On March 22, 1929, G. Percy Smith executed a mortgage for the sum of $4,150 against the property known as the dwelling house or residence property. The mortgage was made "to myself," and the note indorsed and transferred to the De Soto Securities Company.

On January 24, 1931, Dr. Lawton instituted foreclosure proceedings by ordinary process on the three mortgages held by him, as above described. The mortgagor, G. Percy Smith, answered the suit and alleged error in the description of $1,250 mortgage, alleged that it was the intention of all parties for this mortgage to cover only the apartment house property and not the residence property, and prayed for judgment correcting the description contained in the mortgage and releasing the residence property from the execution of said mortgage. There was judgment for plaintiff, Dr. Lawton, for the amount sued for, and recognizing the special mortgages against said property as follows:

The two $2,000 mortgages to be recognized and enforced against the property known as "apartment house property"; and the $1,250 mortgage to be recognized and enforced against the property known as the "residence property." This judgment was signed February 25, 1931, and no appeal was taken therefrom. A fieri facias was issued on April 2, 1931, and the property was seized and advertised for sale to take place on Saturday, May 16, 1931.

On the day of the sale, the De Soto Securities Company filed an intervention and third opposition and secured an order from the district judge to the sheriff to appraise and sell separately, each from the other, the two described properties, and to retain in his hands, pending further orders of the court, the proceeds from the sale of the property known as the residence property. The sale was held, as advertised, and the two properties sold separately. The apartment house property was bid in by Dr. Lawton for the sum of $5,000 and the residence property by the De Soto Securities for $4,000. On the apartment house property, the taxes and cost of sale, amounting to $263.26, were paid by Dr. Lawton, and the balance of $4,736.74 was retained by Dr. Lawton to discharge prior paving liens and to apply pro tanto on his judgment recognizing his mortgage against this property. The amount he retained was insufficient to discharge the amount due under the two mortgages against this prop-

erty, of $2,000 each, together with interest and attorney's fees, after paying the prior paving liens.

On the residence property, the De Soto Securities Company paid to the sheriff the amount of the principal, interest, and attorney's fees on Dr. Lawton's mortgage for $1,250, which was recognized in the judgment, amounting to $1,508.14, plus the amount of taxes, and cost of sale, amounting to $335.25, or a total of $1,843.39, and retained in his hands the sum of $2,156.61, for the purpose of discharging prior paving liens and to be credited pro tanto on its mortgage and note in the sum of $4,150.

There is no contest now over the taxes and cost in the sum of $335.25 paid by the De Soto Securities Company to the sheriff. The only contest is over the distribution of the sum of $1,508.14, the amount of principal, interest, and attorney's fees of the $1,250 mortgage held by Dr. Lawton.

Third opponent alleged it was the holder and owner of the mortgage note above described in the amount of $4,150. It alleged that G. Percy Smith, at the time he executed the $1,250 mortgage to Dr. Lawton, was a married man with children, that said mortgage did not contain a homestead waiver, and that the mortgage held by it did contain a homestead waiver, and that it is entitled to be paid $2,000 out of the sale price of the residence property before any part of the $1,250 mortgage is paid. However, this question has passed out of the case; it being admitted that the $2,000 claimed under the homestead waiver was retained by third opponent when settling with the sheriff for the purchase price of the residence property.

Third opponent further objected to the items of taxes, insurance, etc., claimed by Dr. Lawton in his original suit. However, the objections are not urged here and have been abandoned. Third opponent alleged that the $1,250 mortgage was intended only to cover the apartment house property, and that it was error in preparing the mortgage to cover both properties, the same allegation unsuccessfully urged by G. Percy Smith, mortgagor, in the original suit on the mortgage notes. It prays that the judgment of the lower court be corrected and reformed so as to enforce the $1,250 mortgage against the apartment house property only; or, in the alternative, against both properties and not against the residence property alone, as decreed by the lower court.

It further alleged and prayed that the $1,250 mortgage be paid out of the proceeds of the sale of both properties proportionately to the amount for which each was appraised and sold, and that the remainder of the proceeds from the sale of the residence property be applied to the payment of its mortgage in the sum of $4,150.

The only question now before us for deter-

mination on the merits is, Out of which fund should the $1,250 mortgage be paid, whether out of the proceeds from the sale of the apartment house, the dwelling house, or out of both, in proportion to the amount received from each?

After the evidence had been introduced and the case closed, defendant in third opposition filed an exception of no cause and no right of action. The lower court sustained this exception and dismissed the case. The judgment in part states that the law and evidence being in favor thereof, the exception is sustained. Defendant reurges that exception here, and relies on the doctrine so often announced by our Supreme Court, that a third opponent is without right to attack the legality of a mortgage and claim the proceeds of a sale thereunder at the same time.

The position of third opponent in this case does not fit the rule. It is not attacking the legality of Dr. Lawton's mortgage. It disagrees with Dr. Lawton and the lower court as to what property is described and intended to be described in the $1,250 mortgage. It contends, and it is admitted, that it holds a mortgage against the residence property and contends that the $1,250 mortgage of Dr. Lawton does not cover the residence property and, therefore, its mortgage is a first mortgage against the residence property; and, in the alternative, if the $1,250 mortgage does cover the residence property, it likewise covers the apartment house property and should be paid from both, and not entirely from the residence property.

■ It is true the lower court, in suit of Dr. Lawton against the mortgagor, G. Percy Smith, has rendered a judgment decreeing the $1,250 mortgage to cover only the residence property, and, as between those parties, the judgment has long since become final. Whether third opponent has the right to ask that the judgment be reformed and changed, without having appealed from it, and by third opposition, as is attempted in this case, we seriously doubt. At the time it filed the third opposition, it could have appealed devolutively from that judgment and have stayed in the hands of the sheriff the proceeds of the sale, as it has done. But be that as it may, on the merits, as disclosed by the record, we are convinced that third opponent is without a legal right to any of the proceeds now held by the sheriff, even though we assume that the $1,250 mortgage covered both the properties. It did not cover only the apartment house.

With this assumption in mind, we will look at the respective rank of each mortgage. The first mortgage for $2,000 held by defendant, was against the apartment house. The second mortgage, likewise held by defendant, for $1,250, was against both properties, apartment house and dwelling. The third mortgage executed by mortgagor, for $2,000, held by defendant, against the apartment house property, and the fourth mortgage executed by mortgagor was for $4,150, held by third opponent, and against the residence property.

■ It is well settled by our jurisprudence and the Revised Civil Code (article 3282), and decisions thereunder, that a mortgage is in its nature indivisible and prevails over all the immovables subjected to it, and over each and every portion. Bagley v. Tate, 10 Rob. 45; Succession of Anger, 36 La. Ann. 252; Hargrove v. O'Banion, 5 La. App. 630; Burgess v. Gordy, 32 La. Ann. 1296; Powell v. Hayes, 31 La. Ann. 789.

■ It is likewise well settled that the mortgagee can execute his mortgage against all or any part of the property; that he can release part and execute against the remainder, and recover his entire debt represented by the mortgage against any part. The only exception to this right is where the first mortgagee, by exercising it, would injure the second mortgagee and not benefit himself. This exception is based upon article 21 of the Revised Civil Code, and equity is what creates the exception. Equity does not go so far as to make a first mortgagee take a loss on his mortgage, in order to prevent the second mortgagee from losing. Equity does not favor second mortgagees to that extent; if it did, it would no longer be equity. With these principles in mind, we will discuss the rights of defendant.

■ When he took the $1,250 mortgage on both properties, it was a second mortgage on the apartment house and a first mortgage on the residence property, and at that time, when the note became due, he could have executed against the residence property alone under the $1,250 mortgage, and in fact, the mortgagor could have required him to execute only on the residence property, as it was over a value sufficient to pay the mortgage. Code of Practice, art. 650.

When he took the third mortgage for $2,000, it was a third mortgage on the apartment house property, and, as the sale disclosed, he had against the apartment house property all it was worth in his two $2,000 mortgages. At that time he was still safe, and could have made his money out of the apartment house for the $4,000 he had against it, and out of the residence property for the $1,250 mortgage he held. There can be no dispute as to his rights in that respect at that time. A year later, third opponent took a second mortgage on the residence property and now contends that by doing so he has changed the right of defendant and he has no longer the same rights he had prior to third opponent's mortgage.

■ He invokes the doctrine of equity and natural justice (if there is such a thing), which is the doctrine of marshaling assets. There is no express law in Louisiana govern-

ing the same, but because our courts are courts of equity, as well as of law (Civil Code, art. 21), it is recognized here, as it is in every enlightened system of jurisprudence. Willey v. St. Charles Hotel Co., 52 La. Ann. 1592, 28 So. 182.

The above decision, together with Succession of Anger, 36 La. Ann. 252, Blanchard v. Naquin, 116 La. 806, 41 So. 99, First National Bank v. Garlick, 137 La. 282, 68 So. 610, and Sartor Sons & Co. v. Brown, 164 La. 849, 114 So. 709, are relied upon by third opponent in support of his contention for the marshaling of assets which requires the two properties to contribute in proportion to their value in paying the common primary burden. The facts in Sartor Sons & Co. v. Brown are not in point, likewise in the case of Willey v. St. Charles Hotel Company. In Succession of Anger, the difference is that the first mortgagee did not stand any chance of losing. If he was paid all out of one property or proportionately out of both, his mortgage would be satisfied. If he was paid all out of one, he would have wiped out the second mortgage on that piece of property and made the second mortgage on the other piece of property a first mortgage. He would have injured one second mortgagee and benefited another, without any benefit to himself. Another difference is that the rights of all creditors were fixed by death in that case of the mortgage debtor, and could not be changed. The court said:

"The Graves mortgage was and remained in full efficacy on both plantations at the date of the mortgagors' and owner's death. The rights of creditor are fixed at the debtor's death, and no one can, by superior diligence, or by dealing with the executor, or by the executor's own course, get an advantage over others. Buard v. Lemee, 12 Rob. 243; Boyce v. Escoffie, 2 La. Ann. 872.

"It is not a question of discussion opposed to the special mortgage creditor. He is undoubtedly entitled to be paid in full before any part of the proceeds of either property can be touched by any second mortgage creditor. It is a mere question of distribution between second mortgage creditors. * * *

"The opponent asks that we should order the proceeds of 'Hermitage' to be held by the executor and distribution deferred until all the property be sold, and the creditors shall be ranked and classed according to their legal rights. The difficulty in the way of this lies in the absence of right to restrain the first mortgage creditor in his absolute right to receive the proceeds of sale of the mortgaged property. He has no concern with the order of sale. His mortgage is tota in toto, tota in qualibet parte. Bagley v. Tate, 10 Rob. 45.

"The proceeds as fast as reduced to cash belong to him and he has the right to take them until his debt be discharged.

"We shall effect the same purpose, however, so far as the rights of opponent are concerned, by reserving and recognizing his right, when the 'Forlorn Hope' plantation and other property shall be sold, to require such a distribution of the proceeds as will award to him the same amount in satisfaction of his claim as he would have received had the proceeds of 'Hermitage' been present for simultaneous distribution."

And in a concurring opinion, Judge Bermudez, Chief Justice, said:

"It cannot be doubted that, where it is sought to enforce a mortgage granted on two or more pieces of real estate, and in the absence of stipulation to the contrary, it is optional with the mortgagee who represents the entire claim, to have the property sold, either in block or separately, for the reason that he can subject one piece only to his claim and if he chose, release the others entirely, and that subsequent mortgages, if any have become such, exposed to that eventually.

"It is likewise clear that the mortgagor has also the right to require that the real estate encumbered be divided as described in the act of mortgage and sold accordingly, as he has the privilege of pointing out to the sheriff which of his property shall be first seized and sold.

"But the exercise of such a right by the mortgagor necessarily must be subordinate to the condition, that no injury or damage shall thereby result to other creditors. Were it not so, it would lie in the power of the mortgagor to benefit a subsequent mortgagee on one piece to the detriment of another mortgagee on other property."

All of which clearly shows a different situation from that presented in the case at bar. There is no attempt here to give some other second mortgage holder a preference. It is an attempt by defendant to execute his three mortgages in a way that he will secure a near satisfaction of them all, and when third opponent took a second mortgage, he was charged with notice that this might be done. The recordation of a mortgage is notice to the world, and third opponent is charged with notice of the three mortgages held by defendant and that he could and probably would elect to pursue the course he has in executing on them. Certainly third opponent could not complain if defendant had by written act released from his $1,250 mortgage the apartment house; neither can he complain if he executes on only the residence property, in order to save himself from loss.

Blanchard v. Naquin is likewise not in point, the court holding in that case that the mortgagee would get all that was due him,

had no interest in what property the funds were derived from, and had no right to be heard. The facts in the case of First National Bank v. Garlick are not in point. At the time third opponent secured his mortgage against the residence property, the rights of defendant under his mortgage were fixed, and third opponent was charged with knowledge of defendant's rights under his mortgage, and third opponent's mortgage was taken subject to defendant's rights, and now, in the name of equity, defendant cannot be dispossessed of those rights and forced to accept a loss on his mortgage in order to benefit third opponent. A different situation might arise if, under either plan, defendant would receive full satisfaction of his mortgage debt, but that is not the case. The only way defendant can receive satisfaction of his mortgage is to execute his judgment on the two $2,000 mortgages against the apartment house property and his $1,250 mortgage against the residence property, which he has attempted to do.

We are convinced that third opponent has neither a right nor cause of action to oppose the manner in which defendant has executed the judgment recognizing his mortgages to rest against the properties as follows: The two $2,000 mortgages against the apartment house property and the $1,250 mortgage against the residence property.

The judgment of the lower court is correct, and it is therefore affirmed, with all costs.